## HANNA *v.* PLUMER, EXECUTOR.

No. 171.   Argued January 21, 1965.—Decided April 26, 1965.

*Albert P. Zabin* argued the cause for petitioner, *pro hac vice,* by special leave of Court.   With him on the brief was *George Welch.*

*James J. Fitzpatrick* argued the cause for respondent. On the brief were *Alfred E. LoPresti* and *James T. Connolly.*

Mr. Chief Justice Warren delivered the opinion of the Court.

The question to be decided is whether, in a civil action where the jurisdiction of the United States district court is based upon diversity of citizenship between the parties, service of process shall be made in the manner prescribed by state law or that set forth in Rule 4 (d)(1)· of the Federal Rules of Civil Procedure.

On February 6, 1963, petitioner, a citizen of Ohio, filed her complaint in the District Court for the District of Massachusetts, claiming damages in excess of $10,000 for personal injuries resulting from an automobile accident in South Carolina, allegedly caused by the negligence of one Louise Plumer Osgood, a Massachusetts citizen deceased at the time of the filing of the complaint. Respondent, Mrs. Osgood's executor and also a Massachusetts citizen, was named as defendant. On February 8, service was made by leaving copies of the summons and the complaint with respondent's wife at his residence, concededly in compliance with Rule 4 (d)(1), which provides:

> "The summons and complaint shall be served together. The plaintiff shall furnish ' the person making service with such copies as are necessary. Service shall be made as follows:
>
> "(1) Upon an individual other than an infant or an incompetent person, by delivering a copy of the summons and of the complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein . . . ."

Respondent filed his answer on February 26, alleging, *inter alia,* that the action could not be maintained because it had been brought "contrary to and in violation of the

provisions of Massachusetts General Laws (Ter. Ed.) Chapter 197, Section 9." That section provides:

"Except as provided in this chapter, an executor or administrator shall not be held to answer to an action by a creditor of the deceased which is not commenced within one year from the time of his giving bond for the performance of his trust, or to such an action which is commenced within said year unless before the expiration thereof the writ in such action has been served by delivery in hand upon such executor or administrator or service thereof accepted by him or a notice stating the name of the estate, the name and address of the creditor, the amount of the claim and the court in which the action has been brought has been filed in the proper registry of probate. . . ." Mass. Gen. Laws Ann., c. 197, § 9 (1958).

On October 17, 1963, the District Court granted respondent's motion for summary judgment, citing *Ragan* v. *Merchants Transfer Co.*, 337 U. S. 530, and *Guaranty Trust Co.* v. *York*, 326 U. S. 99, in support of its conclusion that the adequacy of the service was to be measured by § 9, with which, the court held, petitioner had not complied. On appeal, petitioner admitted noncompliance with § 9, but argued that Rule 4 (d)(1) defines the method by which service of process is to be effected in diversity actions. The Court of Appeals for the First Circuit, finding that "[r]elatively recent amendments [to § 9] evince a clear legislative purpose to require personal notification within the year,"[1] concluded that the conflict of state

---

[1] Section 9 is in part a statute of limitations, providing that an executor need not "answer to an action . . . which is not commenced within one year from the time of his giving bond . . . ." This part of the statute, the purpose of which is to speed the settlement of estates, *Spaulding* v. *McConnell*, 307 Mass. 144, 146, 29 N. E. 2d 713, 715 (1940); *Doyle* v. *Moylan*, 141 F. Supp. 95 (D. C. D. Mass.

and federal rules was over "a substantive rather than a procedural matter," and unanimously affirmed. 331 F. 2d 157. Because of the threat to the goal of uniformity of federal procedure posed by the decision below,[2] we granted certiorari, 379 U. S. 813.

We conclude that the adoption of Rule 4 (d)(1), designed to control service of process in diversity actions,[3]

---

1956), is not involved in this case, since the action clearly was timely commenced. (Respondent filed bond on March 1, 1962; the complaint was filed February 6, 1963; and the service—the propriety of which is in dispute—was made on February 8, 1963.) 331 F. 2d, at 159. Cf. *Guaranty Trust Co.* v. *York, supra; Ragan* v. *Merchants Transfer Co., supra.*

Section 9 also provides for the manner of service. Generally, service of process must be made by "delivery in hand," although there are two alternatives: acceptance of service by the executor, or filing of a notice of claim, the components of which are set out in the statute, in the appropriate probate court. The purpose of this part of the statute, which *is* involved here, is, as the court below noted, to insure that executors will receive actual notice of claims. *Parker* v. *Rich,* 297 Mass. 111, 113–114, 8 N. E. 2d 345, 347 (1937). Actual notice is of course also the goal of Rule 4 (d)(1); however, the Federal Rule reflects a determination that this goal can be achieved by a method less cumbersome than that prescribed in § 9. In this case the goal seems to have been achieved; although the affidavit filed by respondent in the District Court asserts that he had not been served in hand nor had he accepted service, it does not allege lack of actual notice.

[2] There are a number of state service requirements which would not necessarily be satisfied by compliance with Rule 4 (d)(1). See, e. g., Cal. Civ. Proc. Code § 411 8; Idaho Code Ann. § 5–507 7 (1948); Ill. Rev. Stat., c. 110, § 13.2 (1963); Ky. Rev. Stat., Rules Civ. Proc., Rule 4.04 (1962); Md. Ann. Code, Rules Proc., Rule 104 b (1963); Mich. Rev. Jud. Act § 600.1912 (1961); N. C. Gen. Stat. § 1–94 (1953); S. D. Code § 33.0807 (8) (Supp. 1960); Tenn. Code Ann. § 20–214 (1955).

[3] "These rules govern the procedure in the United States district courts in all suits of a civil nature whether cognizable as cases at law or in equity, with the exceptions stated in Rule 81. . . ." Fed. Rules Civ. Proc. 1.

This case does not come within any of the exceptions noted in Rule 81.

neither exceeded the congressional mandate embodied in the Rules Enabling Act nor transgressed constitutional bounds, and that the Rule is therefore the standard against which the District Court should have measured the adequacy of the service. Accordingly, we reverse the decision of the Court of Appeals.

The Rules Enabling Act, 28 U. S. C. § 2072 (1958 ed.), provides, in pertinent part:

> "The Supreme Court shall have the power to prescribe, by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure of the district courts of the United States in civil actions.

> "Such rules shall not abridge, enlarge or modify any substantive right and shall preserve the right of trial by jury . . . ."

Under the cases construing the scope of the Enabling Act, Rule 4 (d)(1) clearly passes muster. Prescribing the manner in which a defendant is to be notified that a suit has been instituted against him, it relates to the "practice and procedure of the district courts." Cf. *Insurance Co.* v. *Bangs,* 103 U. S. 435, 439.

> "The test must be whether a rule really regulates procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Sibbach* v. *Wilson & Co.,* 312 U. S. 1, 14.[4]

In *Mississippi Pub. Corp.* v. *Murphree,* 326 U. S. 438, this Court upheld Rule 4 (f), which permits service of a summons anywhere within the State (and not merely the district) in which a district court sits:

> "We think that Rule 4 (f) is in harmony with the Enabling Act . . . . Undoubtedly most alterations

---

[4] See also *Schlagenhauf* v. *Holder,* 379 U. S. 104, 112–114.

of the rules of practice and procedure may and often do affect the rights of litigants. Congress' prohibition of any alteration of substantive rights of litigants was obviously not addressed to such incidental effects as necessarily attend the adoption of the prescribed new rules of procedure upon the rights of litigants who, agreeably to rules of practice and procedure, have been brought before a court authorized to determine their rights. *Sibbach* v. *Wilson & Co.,* 312 U. S. 1, 11–14. The fact that the application of Rule 4 (f) will operate to subject petitioner's rights to adjudication by the district court for northern Mississippi will undoubtedly affect those rights. But it does not operate to abridge, enlarge or modify the rules of decision by which that court will adjudicate its rights." *Id.,* at 445–446.

Thus were there no conflicting state procedure, Rule 4 (d)(1) would clearly control. *National Rental* v. *Szukhent,* 375 U. S. 311, 316. However, respondent, focusing on the contrary Massachusetts rule, calls to the Court's attention another line of cases, a line which—like the Federal Rules—had its birth in 1938. *Erie R. Co.* v. *Tompkins,* 304 U. S. 64, overruling *Swift* v. *Tyson,* 16 Pet. 1, held that federal courts sitting in diversity cases, when deciding questions of "substantive" law, are bound by state court decisions as well as state statutes. The broad command of *Erie* was therefore identical to that of the Enabling Act: federal courts are to apply state substantive law and federal procedural law. However, as subsequent cases sharpened the distinction between substance and procedure, the line of cases following *Erie* diverged markedly from the line construing the Enabling Act. *Guaranty Trust Co.* v. *York,* 326 U. S. 99, made it clear that *Erie*-type problems were not to be solved by

reference to any traditional or common-sense substance-procedure distinction:

> "And so the question is not whether a statute of limitations is deemed a matter of 'procedure' in some sense. The question is . . . does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?" 326 U. S., at 109.[5]

Respondent, by placing primary reliance on *York* and *Ragan*, suggests that the *Erie* doctrine acts as a check on the Federal Rules of Civil Procedure, that despite the clear command of Rule 4 (d)(1), *Erie* and its progeny demand the application of the Massachusetts rule. Reduced to essentials, the argument is: (1) *Erie,* as refined in *York,* demands that federal courts apply state law whenever application of federal law in its stead will alter the outcome of the case. (2) In this case, a determination that the Massachusetts service requirements obtain will result in immediate victory for respondent. If, on the other hand, it should be held that Rule 4 (d)(1) is applicable, the litigation will continue, with possible victory for petitioner. (3) Therefore, *Erie* demands application of the Massachusetts rule. The syllogism possesses an appealing simplicity, but is for several reasons invalid.

In the first place, it is doubtful that, even if there were no Federal Rule making it clear that in-hand service is not required in diversity actions, the *Erie* rule would have obligated the District Court to follow the Massachusetts procedure. "Outcome-determination" analysis was never

---

[5] See also *Ragan* v. *Merchants Transfer Co., supra; Woods* v. *Interstate Realty Co.,* 337 U. S. 535; *Bernhardt* v. *Polygraphic Co.,* 350 U. S. 198, 203–204, 207–208; cf. *Byrd* v. *Blue Ridge Cooperative,* 356 U. S. 525.

intended to serve as a talisman. *Byrd* v. *Blue Ridge Cooperative*, 356 U. S. 525, 537. Indeed, the message of *York* itself is that choices between state and federal law are to be made not by application of any automatic, "litmus paper" criterion, but rather by reference to the policies underlying the *Erie* rule. *Guaranty Trust Co.* v. *York, supra,* at 108–112.[6]

The *Erie* rule is rooted in part in a realization that it would be unfair for the character or result of a litigation materially to differ because the suit had been brought in a federal court.

> "Diversity of citizenship jurisdiction was conferred in order to prevent apprehended discrimination in state courts against those not citizens of the State. *Swift* v. *Tyson* introduced grave discrimination by non-citizens against citizens. It made rights enjoyed under the unwritten 'general law' vary according to whether enforcement was sought in the state or in the federal court; and the privilege of selecting the court in which the right should be determined was conferred upon the non-citizen. Thus, the doctrine rendered impossible equal protection of the law." *Erie R. Co.* v. *Tompkins, supra,* at 74–75.[7]

The decision was also in part a reaction to the practice of "forum-shopping" which had grown up in response to the rule of *Swift* v. *Tyson*. 304 U. S., at 73–74.[8] That the *York* test was an attempt to effectuate these policies is demonstrated by the fact that the opinion framed the inquiry in terms of "substantial" variations between state

---

[6] See *Iovino* v. *Waterson*, 274 F. 2d 41, 46–47 (C. A. 2d Cir. 1959), cert. denied *sub nom. Carlin* v. *Iovino*, 362 U. S. 949.

[7] See also *Klaxon Co.* v. *Stentor Co.*, 313 U. S. 487, 496; *Woods* v. *Interstate Realty Co., supra,* note 5, at 538.

[8] Cf. *Black & White Taxicab Co.* v. *Brown & Yellow Taxicab Co.*, 276 U. S. 518.

and federal litigation. 326 U. S., at 109. Not only are nonsubstantial, or trivial, variations not likely to raise the sort of equal protection problems which troubled the Court in *Erie;* they are also unlikely to influence the choice of a forum. The "outcome-determination" test therefore cannot be read without reference to the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws.[9]

The difference between the conclusion that the Massachusetts rule is applicable, and the conclusion that it is not, is of course at this point "outcome-determinative" in the sense that if we hold the state rule to apply, respondent prevails, whereas if we hold that Rule 4 (d)(1) governs, the litigation will continue. But in this sense *every* procedural variation is "outcome-determinative." For example, having brought suit in a federal court, a plaintiff cannot then insist on the right to

___

[9] The Court of Appeals seemed to frame the inquiry in terms of how "important" § 9 is to the State. In support of its suggestion that § 9 serves some interest the State regards as vital to its citizens, the court noted that something like § 9 has been on the books in Massachusetts a long time, that § 9 has been amended a number of times, and that § 9 is designed to make sure that executors receive actual notice. See note 1, *supra.* The apparent lack of relation among these three observations is not surprising, because it is not clear to what sort of question the Court of Appeals was addressing itself. One cannot meaningfully ask how important something is without first asking "important for what purpose?" *Erie* and its progeny make clear that when a federal court sitting in a diversity case is faced with a question of whether or not to apply state law, the importance of a state rule is indeed relevant, but only in the context of asking whether application of the rule would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum State, or whether application of the rule would have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff to choose the federal court.

file subsequent pleadings in accord with the time limits applicable in the state courts, even though enforcement of the federal timetable will, if he continues to insist that he must meet only the state time limit, result in determination of the controversy against him. So it is here. Though choice of the federal or state rule will at this point have a marked effect upon the outcome of the litigation, the difference between the two rules would be of scant, if any, relevance to the choice of a forum. Petitioner, in choosing her forum, was not presented with a situation where application of the state rule would wholly bar recovery; [10] rather, adherence to the state rule would have resulted only in altering the way in which process was served.[11] Moreover, it is difficult to argue that permitting service of defendant's wife to take the place of in-hand service of defendant himself alters the mode of enforcement of state-created rights in a fashion sufficiently "substantial" to raise the sort of equal protection problems to which the *Erie* opinion alluded.

There is, however, a more fundamental flaw in respondent's syllogism: the incorrect assumption that the rule of *Erie R. Co.* v. *Tompkins* constitutes the appropriate test

---

[10] See *Guaranty Trust Co.* v. *York, supra,* at 108–109; *Ragan* v. *Merchants Transfer Co., supra,* at 532; *Woods* v. *Interstate Realty Co., supra,* note 5, at 538.

Similarly, a federal court's refusal to enforce the New Jersey rule involved in *Cohen* v. *Beneficial Loan Corp.,* 337 U. S. 541, requiring the posting of security by plaintiffs in stockholders' derivative actions, might well impel a stockholder to choose to bring suit in the federal, rather than the state, court.

[11] Cf. *Monarch Insurance Co. of Ohio* v. *Spach,* 281 F. 2d 401, 412 (C. A. 5th Cir. 1960). We cannot seriously entertain the thought that one suing an estate would be led to choose the federal court because of a belief that adherence to Rule 4 (d)(1) is less likely to give the executor actual notice than § 9, and therefore more likely to produce a default judgment. Rule 4 (d)(1) is well designed to give actual notice, as it did in this case. See note 1, *supra.*

of the validity and therefore the applicability of a Federal Rule of Civil Procedure. The *Erie* rule has never been invoked to void a Federal Rule. It is true that there have been cases where this Court has held applicable a state rule in the face of an argument that the situation was governed by one of the Federal Rules. But the holding of each such case was not that *Erie* commanded displacement of a Federal Rule by an inconsistent state rule, but rather that the scope of the Federal Rule was not as broad as the losing party urged, and therefore, there being no Federal Rule which covered the point in dispute, *Erie* commanded the enforcement of state law.

> "Respondent contends, in the first place, that the charge was correct because of the fact that Rule 8 (c) of the Rules of Civil Procedure makes contributory negligence an affirmative defense. We do not agree. Rule 8 (c) covers only the manner of pleading. The question of the burden of establishing contributory negligence is a question of local law which federal courts in diversity of citizenship cases (*Erie R. Co. v. Tompkins,* 304 U. S. 64) must apply." *Palmer* v. *Hoffman,* 318 U. S. 109, 117.[12]

(Here, of course, the clash is unavoidable; Rule 4 (d) (1) says—implicitly, but with unmistakable clarity—that in-hand service is not required in federal courts.) At the same time, in cases adjudicating the validity of Federal Rules, we have not applied the *York* rule or other refinements of *Erie,* but have to this day continued to decide questions concerning the scope of the Enabling Act and the constitutionality of specific Federal Rules in light of

---

[12] To the same effect, see *Ragan* v. *Merchants Transfer Co., supra; Cohen* v. *Beneficial Loan Corp., supra,* note 10, at 556; *id.,* at 557 (DOUGLAS, J., dissenting); cf. *Bernhardt* v. *Polygraphic Co., supra,* note 5, at 201–202; see generally *Iovino* v. *Waterson, supra,* note 6, at 47–48.

the distinction set forth in *Sibbach.* E. g., *Schlagenhauf* v. *Holder,* 379 U. S. 104.

Nor has the development of two separate lines of cases been inadvertent. The line between "substance" and "procedure" shifts as the legal context changes. "Each implies different variables depending upon the particular problem for which it is used." *Guaranty Trust Co.* v. *York, supra,* at 108; Cook, The Logical and Legal Bases of the Conflict of Laws, pp. 154–183 (1942). It is true that both the Enabling Act and the *Erie* rule say, roughly, that federal courts are to apply state "substantive" law and federal "procedural" law, but from that it need not follow that the tests are identical. For they were designed to control very different sorts of decisions. When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided *Erie* choice: the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions.[13]

We are reminded by the *Erie* opinion [14] that neither Congress nor the federal courts can, under the guise of formulating rules of decision for federal courts, fashion rules which are not supported by a grant of federal authority contained in Article I or some other section of the Constitution; in such areas state law must govern

---

[13] *Sibbach* v. *Wilson & Co., supra,* at 13–15; see Appointment of Committee to Draft Unified System of Equity and Law Rules, 295 U. S. 774; Orders re Rules of Procedure, 302 U. S. 783; Letter of Submittal, 308 U. S. 649; 1A Moore, Federal Practice ¶ 0.501 [2], at 5027–5028 (2d ed. 1961).

[14] *Erie R. Co* v. *Tompkins, supra,* at 77–79; cf. *Bernhardt* v. *Polygraphic Co., supra,* note 5, at 202; *Sibbach* v. *Wilson & Co., supra,* at 10; *Guaranty Trust Co.* v. *York, supra,* at 105.

because there can be no other law. But the opinion in *Erie*, which involved no Federal Rule and dealt with a question which was "substantive" in every traditional sense (whether the railroad owed a duty of care to Tompkins as a trespasser or a licensee), surely neither said nor implied that measures like Rule 4 (d)(1) are unconstitutional. For the constitutional provision for a federal court system (augmented by the Necessary and Proper Clause) carries with it congressional power to make rules governing the practice and pleading in those courts, which in turn includes a power to regulate matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either. Cf. *M'Culloch* v. *Maryland,* 4 Wheat. 316, 421. Neither *York* nor the cases following it ever suggested that the rule there laid down for coping with situations where no Federal Rule applies is coextensive with the limitation on Congress to which *Erie* had adverted. Although this Court has never before been confronted with a case where the applicable Federal Rule is in direct collision with the law of the relevant State,[15] courts of appeals faced with such clashes have rightly discerned the implications of our decisions.

> "One of the shaping purposes of the Federal Rules is to bring about uniformity in the federal courts by getting away from local rules. This is especially true of matters which relate to the administration of legal proceedings, an area in which federal courts

---

[15] In *Sibbach* v. *Wilson & Co., supra,* the law of the forum State (Illinois) forbade the sort of order authorized by Rule 35. However, *Sibbach* was decided before *Klaxon Co.* v. *Stentor Co., supra,* note 7, and the *Sibbach* opinion makes clear that the Court was proceeding on the assumption that if the law of any State was relevant, it was the law of the State where the tort occurred (Indiana), which, like Rule 35, made provision for such orders. 312 U. S., at 6–7, 10–11.

have traditionally exerted strong inherent power, completely aside from the powers Congress expressly conferred in the Rules. The purpose of the Erie doctrine, even as extended in York and Ragan, was never to bottle up federal courts with 'outcome-determinative' and 'integral-relations' stoppers— when there are 'affirmative countervailing [federal] considerations' and when there is a Congressional mandate (the Rules) supported by constitutional authority." *Lumbermen's Mutual Casualty Co.* v. *Wright,* 322 F. 2d 759, 764 (C. A. 5th Cir. 1963).[16]

*Erie* and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules. Cf. *Herron* v. *Southern Pacific Co.,* 283 U. S. 91. "When, because the plaintiff happens to be a non-resident, such a right is enforceable in a federal as well as in a State court, the forms and mode of enforcing the right may at times, naturally enough, vary because the two judicial systems are not identic." *Guaranty Trust Co.* v. *York, supra,* at 108; *Cohen* v. *Beneficial Loan Corp.,* 337 U. S. 541, 555. Thus, though a court, in measuring a Federal Rule against the standards contained in the Enabling Act and the Constitution, need not wholly blind itself to the degree to which the Rule makes the character and result of the federal litigation stray from the course it would follow in state courts, *Sibbach* v. *Wilson & Co., supra,* at 13–14, it cannot be forgotten that the *Erie* rule, and the guidelines suggested in *York,* were created to serve another purpose altogether. To hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to dis-

---

[16] To the same effect, see *D'Onofrio Construction Co.* v. *Recon Co.,* 255 F. 2d 904, 909–910 (C. A. 1st Cir. 1958).

embowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act.[17]  Rule 4 (d)(1) is valid and controls the instant case.

*Reversed.*

Mr. Justice Black concurs in the result.

Mr. Justice Harlan, concurring.

It is unquestionably true that up to now *Erie* and the cases following it have not succeeded in articulating a workable doctrine governing choice of law in diversity actions.  I respect the Court's effort to clarify the situation in today's opinion.  However, in doing so I think it has misconceived the constitutional premises of *Erie* and has failed to deal adequately with those past decisions upon which the courts below relied.

*Erie* was something more than an opinion which worried about "forum-shopping and avoidance of inequitable administration of the laws," *ante,* p. 468, although to be sure these were important elements of the decision.  I have always regarded that decision as one of the modern cornerstones of our federalism, expressing policies that profoundly touch the allocation of judicial power between the state and federal systems.  *Erie* recognized that there should not be two conflicting systems of law controlling the primary activity of citizens, for such alternative governing authority must necessarily give rise to a debilitating uncertainty in the planning of everyday affairs.[1]  And it recognized that the scheme of our Constitution envisions an allocation of law-making functions between state and federal legislative processes which is undercut if the federal judiciary can make substantive law affect-

---

[17] *Mississippi Pub. Corp.* v. *Murphree, supra,* at 445–446; *Iovino* v. *Waterson, supra,* note 6, at 46.

[1] Since the rules involved in the present case are parallel rather than conflicting, this first rationale does not come into play here.

ing state affairs beyond the bounds of congressional legislative powers in this regard. Thus, in diversity cases *Erie* commands that it be the state law governing primary private activity which prevails.

The shorthand formulations which have appeared in some past decisions are prone to carry untoward results that frequently arise from oversimplification. The Court is quite right in stating that the "outcome-determinative" test of *Guaranty Trust Co.* v. *York,* 326 U. S. 99, if taken literally, proves too much, for any rule, no matter how clearly "procedural," can affect the outcome of litigation if it is not obeyed. In turning from the "outcome" test of *York* back to the unadorned forum-shopping rationale of *Erie,* however, the Court falls prey to like oversimplification, for a simple forum-shopping rule also proves too much; litigants often choose a federal forum merely to obtain what they consider the advantages of the Federal Rules of Civil Procedure or to try their cases before a supposedly more favorable judge. To my mind the proper line of approach in determining whether to apply a state or a federal rule, whether "substantive" or "procedural," is to stay close to basic principles by inquiring if the choice of rule would substantially affect those primary decisions respecting human conduct which our constitutional system leaves to state regulation.[2] If so, *Erie* and the Constitution require that the state rule prevail, even in the face of a conflicting federal rule.

The Court weakens, if indeed it does not submerge, this basic principle by finding, in effect, a grant of substantive legislative power in the constitutional provision for a fed-

[2] See Hart and Wechsler, The Federal Courts and the Federal System 678.

*Byrd* v. *Blue Ridge Coop., Inc.,* 356 U. S. 525, 536–540, indicated that state procedures would apply if the State had manifested a particularly strong interest in their employment. Compare *Dice* v. *Akron, C. & Y. R. Co.,* 342 U. S. 359. However, this approach may not be of constitutional proportions.

eral court system (compare *Swift* v. *Tyson,* 16 Pet. 1), and through it, setting up the Federal Rules as a body of law inviolate.

> "[T]he constitutional provision for a federal court system . . . carries with it congressional power . . . to regulate matters which, though falling within the uncertain area between substance and procedure, *are rationally capable of classification as either."* *Ante,* p. 472. (Emphasis supplied.)

So long as a reasonable man could characterize any duly adopted federal rule as "procedural," the Court, unless I misapprehend what is said, would have it apply no matter how seriously it frustrated a State's substantive regulation of the primary conduct and affairs of its citizens. Since the members of the Advisory Committee, the Judicial Conference, and this Court who formulated the Federal Rules are presumably reasonable men, it follows that the integrity of the Federal Rules is absolute. Whereas the unadulterated outcome and forum-shopping tests may err too far toward honoring state rules, I submit that the Court's "arguably procedural, *ergo* constitutional" test moves too fast and far in the other direction.

The courts below relied upon this Court's decisions in *Ragan* v. *Merchants Transfer Co.,* 337 U. S. 530, and *Cohen* v. *Beneficial Loan Corp.,* 337 U. S. 541. Those cases deserve more attention than this Court has given them, particularly *Ragan* which, if still good law, would in my opinion call for affirmance of the result reached by the Court of Appeals. Further, a discussion of these two cases will serve to illuminate the "diversity" thesis I am advocating.

In *Ragan* a Kansas statute of limitations provided that an action was deemed commenced when service was made on the defendant. Despite Federal Rule 3 which provides that an action commences with the filing of the com-

plaint, the Court held that for purposes of the Kansas statute of limitations a diversity tort action commenced only when service, was made upon the defendant. The effect of this holding was that although the plaintiff had filed his federal complaint within the state period of limitations, his action was barred because the federal marshal did not serve a summons on the defendant until after the limitations period had run. I think that the decision was wrong. At most, application of the Federal Rule would have meant that potential Kansas tort defendants would have to defer for a few days the satisfaction of knowing that they had not been sued within the limitations period. The choice of the Federal Rule would have had no effect on the primary stages of private activity from which torts arise, and only the most minimal effect on behavior following the commission of the tort. In such circumstances the interest of the federal system in proceeding under its own rules should have prevailed.

*Cohen* v. *Beneficial Loan Corp.* held that a federal diversity court must apply a state statute requiring a small stockholder in a stockholder derivative suit to post a bond securing payment of defense costs as a condition to prosecuting an action. Such a statute is not "outcome determinative"; the plaintiff can win with or without it. The Court now rationalizes the case on the ground that the statute might affect the plaintiff's choice of forum (*ante,* p. 469, n. 10), but as has been pointed out, a simple forum-shopping test proves too much. The proper view of *Cohen* is, in my opinion, that the statute was meant to inhibit small stockholders from instituting "strike suits," and thus it was designed and could be expected to have a substantial impact on private primary activity. Anyone who was at the trial bar during the period when *Cohen* arose can appreciate the strong state policy reflected in the statute. I think it wholly legitimate to view Federal Rule 23 as not purporting to deal

with the problem. But even had the Federal Rules purported to do so, and in so doing provided a substantially less effective deterrent to strike suits, I think the state rule should still have prevailed. That is where I believe the Court's view differs from mine; for the Court attributes such overriding force to the Federal Rules that it is hard to think of a case where a conflicting state rule would be allowed to operate, even though the state rule reflected policy considerations which, under *Erie,* would lie within the realm of state legislative authority.

It remains to apply what has been said to the present case. The Massachusetts rule provides that an executor need not answer suits unless in-hand service was made upon him or notice of the action was filed in the proper registry of probate within one year of his giving bond. The evident intent of this statute is to permit an executor to distribute the estate which he is administering without fear that further liabilities may be outstanding for which he could be held personally liable. If the Federal District Court in Massachusetts applies Rule 4 (d)(1) of the Federal Rules of Civil Procedure instead of the Massachusetts service rule, what effect would that have on the speed and assurance with which estates are distributed? As I see it, the effect would not be substantial. It would mean simply that an executor would have to check at his own house or the federal courthouse as well as the registry of probate before he could distribute the estate with impunity. As this does not seem enough to give rise to any real impingement on the vitality of the state policy which the Massachusetts rule is intended to serve, I concur in the judgment of the Court.