**Donna DEVEAU et al., Plaintiffs,**

**v.**

**The MILLIS TRANSPORTATION COMPANY, Inc., et al., Defendants.**

**Civ. A. No. 11737.**

United States District Court
D. Connecticut.

Nov. 20, 1967.

Dupont, Pavetti & Dupont, New London, Conn., for plaintiffs.

Cooney & Scully, Hartford, Conn., for defendants.

### RULING ON DEFENDANTS' OBJECTIONS TO PLAINTIFFS' INTERROGATORY

CLARIE, District Judge.

■ This action in tort arose out of the alleged negligent operation and/or maintenance of the defendant corporation's vehicle, so that a large tire was caused to fall therefrom onto the public highway, where it was permitted to remain until the plaintiffs' vehicle collided with it. In the process of conducting discovery pursuant to Rule 33, Fed. R.Civ.P., the defendants objected to answering the plaintiffs' Interrogatory No. 39. They claimed that the matters inquired about were not relevant to the subject matter of the action and not reasonably calculated to lead to the discovery of admissible evidence at the trial. The interrogatory reads:

"39. Specify the insurance liability policy limits on the insurance policies issued to you which are applicable to this accident."

■ The plaintiffs however, do not contend that the contents of the answer could lead to the discovery of admissible evidence. The law is clear that the disclosure to the jury of insurance coverage could be grounds for a mistrial. The focus of plaintiffs' claim is that the information sought is relevant to the subject matter, as that phrase is used in Rule 26(b), Fed.R.Civ.P. The rule states in part:

"* * * (T)he deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action * * *. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

The relevancy of insurance coverage has been before the courts in this District previously. The defendants rely heavily on Langlois v. Allen, 30 F.R.D. 67 (D.Conn.1962); that case decided that the financial status of the defendant was not a relevant determinant in a negligence action. Similarly, in Flynn v. Williams, 30 F.R.D. 66 (D.Conn.1958), it was felt that, at least prior to a deter-

mination of liability, such information is not relevant. In Novak v. Good Will Grange No. 127, Patrons of Husbandry, 28 F.R.D. 394 (D.Conn.1961), information as to liability, fire, and other insurance was held to be relevant and thus discoverable, where a specific issue had been raised by the pleadings on the question of ownership, possession, and control of the premises.

However, all of these cases were decided prior to the passage of Public Act No. 485 by the 1967 Session of the Connecticut General Assembly; this became effective October 1, 1967. It provides:

> "In any civil action founded upon negligence, the defendant's insurance liability policy limits shall be subject to discovery upon written motion of the plaintiff, which motion and disclosure shall be excluded from the file submitted to the jury."

■ Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) established the principle that federal courts in diversity cases may not, in non-federal matters, disregard the applicable state substantive law. Speaking of the *Erie Doctrine*, so-called, the Supreme Court in Guaranty Trust Co. of New York v. York, 326 U.S. 99, at 109, 65 S.Ct. 1464, at 1470, 89 L.Ed. 2079 (1945) said:

> "In essence, the intent of that decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court."

■ The Connecticut law of discovery is a rule of procedure and not of substance. It is not binding on the federal courts, because its adoption or rejection would not materially determine or affect the outcome of the case. The federal courts are free to follow their own procedural rules. See, 1 Moore, Federal Practice, Para. 0.317(3) at 3535 (2d Ed. 1960). However, it is a factor to be considered in deciding whether or not to allow a plaintiff discovery of the defendant's liability policy limits in a removed diversity action matter. See, Hill v. Greer, 30 F.R.D. 64 (D.N.J.1961). One of the principal policies underlying the *Erie* decision was discouragement of forum-shopping. Hanna v. Plumer, 380 U.S. 460, 468, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1964). This result can be best achieved by maintaining, when it is feasibly possible, similar rules in the state and federal courts, especially where, as here, no substantial prejudice will result.

The present case provides a good example of the inequities which could result from having two divergent sets of rules. The case is here on removal; had it remained in the state court, the plaintiff would have had no trouble under statutory law in requiring an answer to this interrogatory. "The sounder view, we submit, is to require that such disclosure (of liability insurance policy limits) be made." 4 Moore, Federal Practice, Para. 26.16(3) at 1189 (2d Ed. 1960).

Historically, the federal rules have been the vanguard of liberal discovery proceedings. It is their avowed purpose to secure the just, speedy, and inexpensive determination of every action. Rule 1, Fed.R.Civ.P. The requirement that the matter inquired into in discovery must be relevant to the subject matter, has never been construed to embody the strict legal definition of relevancy. If the matter sought would be helpful in securing a just, speedy and inexpensive determination of the litigation, then the argument for its relevancy is strong.

■ The defendant's policy limits can, and in many instances does, facilitate the settlement and disposition of litigation. Verified knowledge of low limits from a reliable source will encourage plaintiffs to seriously consider settle-

ment in cases, which otherwise would probably require a trial. Where a judgment-proof defendant has limited or no coverage, the value of a prospective judgment takes on a new dimension in the form of a realistic evaluation leading to an equitable settlement. The Connecticut legislature, as a matter of public policy, has now determined that timely disclosure of policy limits does have relevance to most negligence actions. This Court recognizes and concurs in that determination.

The defendant suffers no real prejudice by the disclosure of this information. He purchases liability insurance for the sole purpose of satisfying judgment claims against him. It is in his interest that these claims be satisfied within policy limits; and this is best accomplished by a full disclosure of coverage.

> "Unlike other assets, a liability insurance policy exists for the single purpose of satisfying the liability that it covers. It has no other function and no other value." Johanek v. Aberle, 27 F.R.D. 272, 278 (D.Mont. 1961).

If the insured himself were conducting this defense, it is unlikely he would object to this discovery. It is only because the defense is taken over by the insurance company that the objection is raised. See, Slomberg v. Pennabaker, 42 F.R.D. 8 (M.D.Pa.1967). The only possible prejudice to the insurance company is the loss of the tactical advantage of maintaining a cloak of secrecy around the financial status of the defendant. Refusal to order disclosure, results in the fostering of the "sporting theory of justice," which it is the intent of the discovery rules to eliminate. Cook v. Welty, 253 F.Supp. 875 (D.D.C.1966).

Defendants' objections to plaintiffs' Interrogatory No. 39 are therefore overruled. The defendants shall answer within fifteen (15) days. So ordered.