**MONOFLO INTERNATIONAL, INC., Plaintiff,**

v.

**DORAL TRANSPORT, INC., Defendant.**

Civ. A. No. 87–1142–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

April 28, 1988.

Memorandum Opinion June 6, 1988.

Robert A. Vanderhye, Nixon & Vanderhye, Arlington, Va., for plaintiff.

Peter Smirniotopoulos, John Guandolo, John A. Howell, John G. Salisbury, James F. Flint, McCarthy & Durrette, Washington, D.C., for defendant.

HILTON, District Judge.

Plaintiff, Monoflo International, Inc. ("Monoflo"), brought this action against defendant, Doral Transport, Inc. ("Doral"), seeking damages resulting from an accident which occurred while Doral was transporting a Kawaguchi molding machine that Monoflo had purchased from Plasti–Quip Machinery of Ontario, Canada. Doral admits responsibility for the accident; therefore, this dispute concerns only the measure of damages to which Monoflo is entitled.

The Court, having heard evidence on the measure of damages, now makes the following Findings of Fact and Conclusions of Law, pursuant to Rule 52, Federal Rules of Civil Procedure.

### FINDINGS OF FACT

1. The plaintiff, Monoflo, is a corporation organized and existing under the law of the Commonwealth of Virginia, and the defendant, Doral, is a Canadian corporation.

2. In March or April of 1987, Monoflo purchased a used 485 ton Kawaguchi molding machine from Plasti–Quip Machinery of Ontario, Canada for $35,825.00. Thereafter, Monoflo contacted a licensed transportation broker (Trans Serv) to locate a motor carrier to transport the machine from its location in Canada to Monoflo's plant in Winchester, Virginia. Defendant Doral was hired.

3. At the time of purchase, the Kawaguchi machine was in excellent condition, requiring only routine maintenance.

4. On or about May 4, 1987, a Doral vehicle was involved in a single vehicle accident in New York State, and, as a result of that accident, the Kawaguchi machine was damaged and rendered inoperable. On or about May 8, 1987, Doral delivered the damaged machine to Monoflo.

5. The cost to repair the Kawaguchi machine would be $67,893.

6. Monoflo received a good buy on the Kawaguchi machine. Whereas Monoflo's purchase price for the machine was $35,825, its market price was approximately $50,000. The machine was of even more value to Monoflo in view of Monoflo's ownership of other Kawaguchi machines, which allows for interchange of parts.

7. No used 485 ton Kawaguchi toggle type machines were available for purchase by Monoflo as a replacement for the damaged machine.

8. The cost of the new Kawaguchi machine purchased by Monoflo to be used as a substitute for the damaged machine was $249,640.

9. The prime interest rate in 1987 was approximately nine percent (9%).

10. Just prior to the pick-up of the Kawaguchi machine from Plasti–Quip by Doral, Guy Smith of Plasti–Quip issued a bill of lading. This document contained neither the signature of the consignor or the carrier and did not state a declared value for the machine.

11. Mr. Smith wrote on the document "Collect Charges, Papers at C.J. Tower Customs" to indicate that any freight charges were the responsibility of Monoflo, as well as any customs charges and that Tower should be contacted regarding the customs charges. A valuation of "$20,000" ultimately appearing on a customs document was not supplied by Plasti–Quip or Monoflo. Mr. Smith did not consider the value of the machine to be $20,000. Once the error was brought to the attention of Mr. Rader of Monoflo, the customs people were notified, the valuation was changed to indicate the purchase price of the machine, and the additional customs duty was paid.

12. Prior to picking up the Kawaguchi machine, Doral was advised by Lisa Wakeman, an employee of Trans Serve (the transportation broker who arranged the shipment of the machine by Doral), that the machine had a value of about $50,000.

However, neither Doral nor Monoflo agreed upon any valuation of the machine at the time that it was picked up or transported, and Doral never relied on a value of $20,000.

13. This action is controlled by Canadian law.

14. The Public Commercial Vehicles Act of Canada establishes the elements required to create an enforceable bill of lading. In this case, a bill of lading was issued; however, it lacked the requisite information to make it enforceable as to either party. Therefore, pursuant to the Act, Canadian common law damages apply.

15. Under Canadian common law, Damages available to Monoflo are the actual value of the machine, the loss of net profits, prejudgment interest on the total of the actual value damages awarded plus the loss of net profits damages awarded, and "legal costs". The standard for "legal costs" is two-thirds of total expenses absent exceptional circumstances.

16. Under Canadian common law, therefore, a plaintiff is entitled to a higher measure of damages than under Virginia common law. A plaintiff is entitled to recover the market value of the property and the repair cost. A plaintiff may also recover the loss of net profits and the loss of use, if sufficient proof is presented to document these losses, as well as two-thirds of all costs associated with the law suit. Finally, prejudgment interest is available as a matter of right.

17. Monoflo has failed to present sufficient evidence to establish lost profits claimed or lost opportunity damages for the time it did not have the machine until the replacement was put into service. The best measure of the value of the Kawaguchi machine to Monoflo is its repair cost, which is $67,893.

18. Prejudgment interest is determined to be nine percent (9%) per year (prime rate) times one-half year (the approximate time from the filing of the complaint until the rendering of judgment) times the actual damage to Monoflo. Since the actual damage is $67,893, the prejudgment interest is $2929.50.

19. "Legal costs" awarded to Monoflo shall consist of two-thirds of all costs to Monoflo associated with this lawsuit, including, but not limited to, attorney fees, witness fees, deposition transcripts, and travel expenses.

20. This Court sets post-judgment interest on the judgment at nine persent (9%).

## CONCLUSIONS OF LAW

■ Under Canadian law, if an enforceable bill of lading is issued by a freight carrier, the maximum amount of loss or damage may not exceed two dollars ($2) per pound Canadian unless a higher value is declared on the face of the bill of lading by the consignor. If a carrier is to take advantage of this provision of the legislative scheme (provided in the Public Commercial Vehicles Act of Canada), it must conform to the requirements of the statute. To comport with the statute's mandates, the freight carrier must issue a bill of lading which is signed in full by the issuing carrier and by the consignor as accepting the terms and conditions contained therein. (Revised Statutes of Ontario, 1980, Chapter 407, Section 27(1) and 27(2); *Corcoran v. Ehrlick Transport Ltd.*, (1984) 12 D.L.R. (4th) 124).

In this case, a bill of lading was issued, but it did not meet the statutory requirements set forth above. While the shipment was being made on behalf of Monoflo, Monoflo was not given the opportunity to declare value, or otherwise accept the terms and conditions of the bill of lading. Doral may not benefit from the liability limitations provided by statute when no "meeting of the minds" respecting valuation or other terms of the bill of lading had been accomplished. Accordingly, Monoflo is entitled to recover Canadian common law damages.

■ Under Canadian common law, Monoflo is entitled to recover the value of the machine, the loss of net profits or other value of the time compensation to Monoflo for any reasonable period which they did not have the benefit of the machine, prejudgment interest on the total of the actual

value damages awarded plus the loss of net profits damages awarded, and "legal costs".

■ The value of the machine is not necessarily determined by the purchase price or the market value of the property, and may exceed both. The repair cost may be the proper measure of damages when recovery of the market value would not adequately compensate the plaintiff. The full value of an article is recoverable even though the defendant had no reason to know how valuable the article was. Waddams, *The Law of Damages* (1983, at pages 20, 21); *Montreal Cotton & Wool Waste Co. v. Canada Steamship Lines* (1920), 60 S.C.R. 442, 55 D.L.R. 634.

■ Lost profits for the reasonable time period from when the machine should have been put into use until a replacement was obtained is available as a measure of damages. (Waddams, *supra*, at pages 114, 115, and 155; *Victoria Laundry (Windsor) Ltd. v. Neumann Industries Ltd.* (1949) 2 KB 528, (1949) 1 All ER 997; *Kououfos v. C. Czarnikow Ltd. (The Heron II)* (1969) 1 AC 350, (1967) 3 All ER 686 (HL)). However, actual figures for contracts and work in process were not presented, nor were figures for net profits on sales presented to permit a calculation of loss of profits. Evidence was presented to prove the repair cost of the machine to be $67,893, which is the best evidence of the amount of plaintiff's loss.

■ Under Canadian law, prejudgment interest is defined as the prime rate applied to the total damage award to the plaintiff for the time period from the filing of the Statement of Claim (Complaint) until the entry of judgment. A prevailing plaintiff has a *prima facie* right to prejudgment interest. *Corcoran v. Ehrlick Transport Ltd., supra* at page 140. In this case, the prime rate has been determined to be nine percent (9%), and the actual damage to Monoflo is the repair cost of $67,893. Therefore, since the time from the filing of the complaint until the rendering of this judgment is one hundred seventy-five days (175), the prejudgment interest is $2929.50.

Under Canadian law, a prevailing plaintiff is entitled to "legal costs", which encompass all costs to the plaintiff associated with this lawsuit, including attorney fees, witness fees, deposition transcripts, travel expenses, and all other disbursements associated with the conduct of the lawsuit. A typical award (a "party and party" award) is about two-thirds of the total "legal costs".

While such "legal costs" do not equate exactly with "attorney fees" that can be awarded by United States courts under applicable United States law, they will be treated as such for purposes of the procedure here for plaintiff to recoop these costs. Pursuant to Local Rule 11(L), Monoflo has ten days from the entry of this judgment to submit a written brief and appropriate proofs so that a determination of the dollar amount of its award of "legal costs" can be made.

For these reasons, Monoflo is entitled to recover the cost of repair of the machine ($67,893), prejudgment interest in the amount of $2929.50, and two-thirds of the "legal costs".

An appropriate order shall issue.

### MEMORANDUM OPINION

This matter comes before the Court on plaintiff's attorney's petition in support of legal costs pursuant to this Court's order of April 28, 1988.

Under Canadian law, a prevailing plaintiff is entitled to legal costs, which encompass all costs to plaintiff associated with the law suit. Partial indemnification is intended. *Ryan v. McGregor*, (1926) 1 D.L.R. 476 (Ont.S.C.App.Div.). A typical award is about two-thirds of the actual total disbursements of the successful plaintiff.

Whereas Canadian law is utilized for the calculation of an award of attorney fees in this case, the recovery of costs is governed by Rule 54(d) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1821 and § 1920, rather than by Canadian law. Thus, plaintiffs cannot rely on Canadian law to recover any costs which they cannot recover under federal law. *See Hanna v.*

*Plumer,* 380 U.S. 460, 473–74, 85 S.Ct. 1136, 1145–46, 14 L.Ed.2d 8 (1965).

In an affidavit filed in this Court on May 9, 1988, plaintiff's attorney stated that the total of the legal costs to Monoflo is $39,693.09. He also stated that the total attorney time expended relating to this action was seventy-five (75) hours for Robert Vanderhye at two hundred dollars ($200) per hour, two hours of paralegal time at forty-five dollars ($45) per hour, and one hundred forty (140) hours for Michael Keenan at one hundred dollars ($100) per hour. Furthermore, plaintiff's attorney stated that the expert witness fees were $7,711.42. Plaintiff seeks an award of two-thirds of the total legal costs ($26,461.80).

Expert witness fees, absent explicit statutory or contractual authority, are not taxable as costs in amounts exceeding the statutory limit for witness fees of thirty dollars ($30) per day. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* —— U.S. ——, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987); *Lavay Corp. v. Dominion Federal Savings & Loan Assn.,* 830 F.2d 522 (4th Cir.1987). Therefore, plaintiff is not entitled to reimbursement for these fees to the extent they exceed the thirty dollar ($30) per day limit.

I find that the amount of time expended and the hourly rates upon which the attorney fee petition is based are reasonable and that the other expenses listed by plaintiff's counsel are reasonable and should be awarded. Plaintiff should also be awarded expert witness fees in the amount of thirty dollars ($30). Accordingly, plaintiff is awarded legal costs in the amount of $21,341.11 (two-thirds of its total legal costs of $32,011.67).

An appropriate order shall issue.