Martha J. CUTTING, as Executrix of the Estate of Paul M. Cutting, and Martha J. Cutting, Plaintiffs, Appellees,

v.

TOWN OF ALLENSTOWN, Ronald Montplaisir, Jr., etc., and the Allenstown Police Department, Defendants, Appellants.

No. 91–1052.

United States Court of Appeals, First Circuit.

Heard May 8, 1991.

Decided June 18, 1991.

Glenn R. Milner with whom Cook & Molan, P.A. was on brief, Concord, N.H., for defendants, appellants.

Ronald L. Snow with whom Richard B. Couser, Charles A. Szypszak, Megan R. MacMullin, Orr and Reno, P.A. and Andrew P. McEvoy were on brief, Concord, N.H., for plaintiffs, appellees.

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

CAMPBELL, Circuit Judge.

The Town of Allenstown, New Hampshire, (the Town) appeals from the district court's refusal to vacate its August 29, 1988 default judgment entered in favor of plaintiffs Martha Cutting and her late husband, Paul Cutting, in the United States District Court for the District of New Hampshire. The issue on appeal is whether the district court abused its discretion in applying Fed.R.Civ.P. 60(b)(6) when, after having entered a default judgment against the Town, it refused to set aside that judgment.

I.

On May 4, 1986, plaintiff Paul Cutting was arrested by Sergeant Montplaisir of the Allenstown Police Department, and charged with a yellow line violation, disorderly conduct, resisting arrest, and simple assault. About three months later, Mont-

plaisir and the Town's police prosecutor, Michael E. Philbrick, presented their case to the Hooksett District Court. Cutting was found to be not guilty of all charges brought against him.

Nearly two years after Cutting's arrest, the Town received a demand letter from Cutting's counsel seeking payment of $500,000 for him and his wife, Martha, to compensate for injuries allegedly sustained due to Cutting's arrest. The demand letter was transmitted through the Town's insurance agent, Colburn Insurance Agency of Burlington, Vermont, to the Hartford Insurance Group, the Town's general liability carrier, and through Markel Services of Richmond, Virginia, to National Casualty Company, the Town's carrier with respect to law enforcement liability. National Casualty confirmed receipt of the claim and requested copies of all police investigative information. National Casualty asked to be notified by telephone and correspondence of any service of a complaint.

On July 8, 1988, Cutting brought this 42 U.S.C. § 1983 action against the Town and Sergeant Montplaisir alleging federal civil rights violations, assault and battery, malicious prosecution, and other wrongs to him and his wife. Three days after the complaint was filed, the town clerk, Edward Cyr, and the chairman of the board of selectmen, Gabriel Daneault, were served in their capacity as town representatives. Montplaisir was served the same day. The summons directed the Town and Montplaisir to serve an answer upon Cutting's counsel within twenty days, or else suffer the entry of a judgment by default.

After Daneault was served, he took the process to the police department and gave it to Montplaisir, apparently because Montplaisir was the first police officer he saw. He told Montplaisir to call the insurance trust to which Allenstown belonged to find out which carrier covered it. Montplaisir said that when he communicated with the insurance trust, he was told that he would be contacted by a representative of another insurance company, but he was never contacted by anyone. A few days later, Montplaisir told Daneault that "everything was

taken care of." Daneault did not contact town counsel or hire an attorney, he did not investigate the claim or make further inquiry of Montplaisir, and he did not forward the summons to National Casualty as the company had requested.

During the same period that the summons reached defendants, several articles on the subject of Cutting's arrest and his pending suit against the Town appeared in the *Concord Monitor*, and the *Manchester Union Leader*, two newspapers serving the community of Allenstown. Sergeant Montplaisir, himself, was interviewed in connection with one of the articles.

Officer Philbrick, who was also involved in handling the matter for the Town, testified that he remembers sending to the insurance company a single "writ." He says he put the single document into a manila envelope, wrote the insurance company's address on it, and made a note in his personal "court log." He testified that he stamped the necessary postage and wrote a return address on the envelope and sent it by unregistered regular mail without any kind of an accompanying transmittal letter, contrary to what he had done on all prior similar occasions. Other than the notation in the log book, there is no other documentation of any kind that would indicate that the suit papers were sent to the insurance company. Philbrick received no acknowledgment of having received the summons from National Casualty, and he had no telephone contact with them after he claims to have mailed the summons. He had no subsequent conversations with any of the selectmen, Montplaisir, or the police chief about the matter.

National Casualty has no record of ever receiving a summons and complaint, and had no knowledge of their existence before the Cuttings' made their appearance in May 1990. The National Casualty Company file in this matter was reviewed on November 29, 1988, in light of Cutting's first demand for compensation, and an entry made therein: "read file—no action to be taken at this time—no suit has been filed." The file was eventually closed on March 2, 1989. On October 14, 1988, Hart-

ford Insurance Group, the Town's comprehensive general liability carrier, wrote to the Allenstown selectmen about the Cutting matter. While denying coverage, Hartford's representative specifically asked to be provided with a copy of any complaint made by Cutting alleging misconduct or negligence against Allenstown or its selectmen. From the record that we have before us it seems that the summons and complaint were never forwarded to Hartford, as requested.

On August 16, 1988, defendants having filed no answer within the prescribed twenty days, the clerk of the district court issued an order stating that defendants had failed to plead or otherwise defend, and that the court was in a position to enter a default judgment. Copies of this order were noted as sent to plaintiffs' attorneys but not to the Town. The Cuttings thereupon moved for entry of a default judgment on August 26, 1988, and requested a hearing on damages. Default was entered on August 29, 1988, and a hearing on damages was held before the magistrate on October 14, 1988, resulting in a recommendation that Cutting be awarded $254,758.03 actual damages and $100,000 additional damages. Martha Cutting was awarded $50,000 actual damages. It was also recommended the Cuttings be awarded $19,-307.01 in attorneys' fees, and $844.84 in costs and expenses. The district court approved the magistrate's report, and entered final judgment on March 8, 1989. No notice of any of the above events was sent to the Town or other defendants.

Thirteen months later, on April 12, 1990, a writ of execution was issued by the district court upon plaintiffs' request. On May 8, 1990, counsel for the Town was contacted by the Merrimack County (New Hampshire) sheriff's office regarding the writ of execution. On May 9, 1990, the Town filed its appearance with the district court and, along with the other defendants, filed a motion for relief from judgment pursuant to Fed.R.Civ.P. 60(b)(1) & (6). On August 13, 1990, after the parties had submitted memoranda and oral argument to the court regarding defendants' motion for relief from judgment, plaintiff Paul Cut-

ting died. On August 29, 1990, following a hearing, the district court denied the defendants' motion for relief from judgment in an order setting forth its reasons, and on October 3, 1990, the district court denied defendants' motion to reconsider.

## II.

At the hearing on defendants' motion for relief from judgment, the district court acknowledged that, at the time it had ruled on plaintiffs' motion for entry of default judgment, it had mistakenly assumed that copies of the motion had gone to the Town, likely having in mind N.H.Rev.Stat. Ann. § 514:1–a, *infra* note 2. Defendants argue from this that the court must have believed that notice was a material and critical factor, hence it abused its discretion when, later, it denied defendants' motion for relief from judgment. The Town's premise does not support its conclusion. The district court was far better able than ourselves to assess whatever importance it earlier placed upon its mistaken assumption about notice. It expressly noted the mentioned factor; but in its order disposing of the motion for relief from judgment it also cited and weighed various other factors and, after doing so, it declined to disturb the default judgment. Part IV, *infra*. As the court recognized, under the Federal Rules of Civil Procedure, once the summons was properly served under Rule 4, neither the plaintiff nor the clerk of court had a further duty to notify the defaulted parties. Fed.R.Civ.P. 5(a) specifically negates any requirement of service "on parties in default for failure to appear." While state rules may be different, the federal rules control. *Infra*. While, therefore, it was unfortunate the Town did not receive notice of the further proceedings, including particularly of the hearing on damages, and while, had the court known that notice was not sent, it might have acted on its own to provide additional notice not called for by the rules, the fact remained that the Town and Montplaisir received all the notice called for under the

governing federal rules.[1] In such circumstances, and given the counterbalancing factors mentioned by the court, we cannot say that the lack of any further notice required the court to reopen the case.

## III.

■ We reject the defendants' related claim that a New Hampshire statute that requires the giving of notice to towns prior to the entry of default in a state court action should have received controlling weight.[2]

Under 42 U.S.C. § 1988, federal courts may "borrow" state law in § 1983 suits when the federal law does not address the issue under scrutiny. But the relevant procedural law was perfectly clear here. It is well settled that procedural matters are governed in federal cases by the "housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules." *Hanna v. Plumer*, 380 U.S. 460, 473, 85 S.Ct. 1136, 1145, 14 L.Ed.2d 8 (1965). In *Hanna*, the Supreme Court held that questions about the adequacy and manner of notice "relate[ ] to the 'practice and procedure of the district courts' " and are covered by the federal rules. *Id.* at 464, 85 S.Ct. at 1140. As already indicated, the federal rules provide flatly that "[n]o service need be made on parties in default for failure to appear." Fed.R.Civ.P. 5(a). As the federal rules address the issue under scrutiny, the district judge properly applied them when entering the default judgment in favor of plaintiffs. While plaintiffs played their cards very close to their chest, a strategy one may

debate in human and ethical terms, we see no legal basis for compelling them to do more than the framers of the rules thought necessary.

## IV.

■ Defendants argue finally that there were such strong equities favoring relief from the default judgment that the district court was compelled to allow their Rule 60(b)(6) motion.

We begin with the general proposition that motions to set aside default judgments are "left to the sound discretion of the district court, and that appellate courts will not reverse the district court's decision unless clearly wrong." *Taylor v. Boston and Taunton Transp. Co.*, 720 F.2d 731, 732 (1st Cir.1983). *See also General Contracting & Trading Co., LLC, v. Iterpole, Inc.*, 899 F.2d 109, 112 (1st Cir.1990); *United States v. Berenguer*, 821 F.2d 19, 20 (1st Cir.1987). At the time counsel for the Town finally entered the proceedings, the Town's relief from the default judgment could only be obtained under the residual relief subsection, Fed.R.Civ.P. 60(b)(6), which allows relief "for any other reason justifying relief from the operation of the judgment." [3] As stated in the Rule, "[t]he motion shall be made within a reasonable time ..." In denying their motion for relief, the district court acknowledged, as we have already said, that while the defendants had been served with process, they were never notified subsequently of the hearing on damages. *Supra.* The district judge went on to say that,

---

**1.** Defendants' argument that notice of plaintiffs' motion for default judgment was required under Fed.R.Civ.P. 5(a) because, at the time it was made, the clerk had yet to enter a default, is without merit. Where defendants, as here, were served with the summons and do not appear and answer within the required period, they are "parties in default" for Rule 5(a) purposes. *Varnes v. Local 91, Glass Bottle Blowers Association of United States and Canada*, 674 F.2d 1365, 1368 n. 3 (11th Cir.1982).

**2.** New Hampshire Revised Statutes Annotated § 514:1–a provide as follows:
If the defendant on whom the process has been served is a town, a default shall not be

recorded and a judgment shall not be rendered against the town, unless the clerk of court has given written notice to the town of the impending default judgment at least 10 days before the default judgment is rendered.

**3.** Rule 60(b)(1) allows the court to relieve a party from a final judgment because of "mistake, inadvertence, surprise or excusable neglect." The Town, however, can not benefit from that particular provision of Rule 60 because it requires that the movant party do so within one year after entry of judgment. The Town filed for relief 13 months after entry of judgment.

although the default might have passed muster, at least the defendants could have contested the amount of damages. Plaintiffs' counsel also waited over thirteen months from the time of judgment until they sought a writ of execution. The court realizes that under [the] federal rules neither the plaintiff nor the Clerk of Court had any duty to notify defaulting parties of a hearing on damages.

The court found that on certain issues in the original suit the Town had some meritorious defenses. However, citing our opinion in *General Contracting & Trading Co. LLC*, 899 F.2d 109, 112, where we declared that the elements that should be probed in setting aside a default for good cause shown are: "[w]hether a default was wilful, innocent, or somewhere in between; whether setting it aside would prejudice the movant's adversary; whether the movant possesses a meritorious defense; and the timing of the motion," the district court, in denying the motion, stated:

[t]he quietus to the defendant's position as far as the court is concerned is the tragic death of the plaintiff Paul Cutting. If this court sets aside the default judgment there is no conceivable way that the plaintiff's estate and Martha Cutting could prove their case. Under all the circumstances of this case and its past history the court finds that this motion was not filed within a reasonable time.

Plainly, the district judge carefully weighed the relevant factors and considered the possible alternatives before rejecting the Town's motion for relief. While, in some circumstances, alleged negligence by an insurance carrier, or a "tactical" decision by plaintiffs' counsel (as was the case here) could conceivably constitute grounds for setting aside a default judgment, the district court did not abuse its discretion in rejecting the Town's motion in light of the countervailing factors that were also present. Quite clearly, the Town, or its insurance carrier, or both were seriously negligent in their handling of the lawsuit. Proper service was made and, indeed, the case appears to have been widely publicized in the press. Yet so lethargic was the response that at no time prior to May 1990 did any town representative or any insurance carrier make contact with Cutting's counsel about the claim. The claim letter was not acknowledged. It is not clear whether a town representative ever actually mailed the summons and complaint to National Casualty. No procedure apparently existed in the Town for following up whether or not the insurance carrier had received notice and was proceeding to defend the Town and its employees. No town representative ever responded to Hartford's request for a copy of the complaint.

While expressing some sympathy for the Town, especially as regards notice of the damages hearing, the court feared that setting the judgment aside would unfairly prejudice the Town's adversary, as plaintiff Paul Cutting had by then passed away. The court found that if "the court sets aside the default judgment there is no conceivable way that the plaintiff's estate and Martha Cutting could prove their case," and that the "timing of the motion is of insurmountable prejudice to the plaintiffs in this action." We cannot lightly dismiss this determination by the district court. The fact is, plaintiffs complied with the rules, and defendants, flagrantly, did not. The death of the nonmovant party, coupled with the other circumstances noted by the court, created a basis upon which the court could reasonably conclude that relief from the default judgment was not appropriate. The district court did not abuse its discretion in refusing to reopen.

*Affirmed. Costs to appellees.*