WM. H. McGEE & COMPANY and Carlisle Equipment Co., Plaintiffs,

v.

LIEBHERR AMERICA, INC., Defendant.

Civ. A. No. 91–125.

United States District Court, E.D. Kentucky, Covington.

April 10, 1992.

Gary L. Herfel, Florence, Ky., Michael K. Siebenhaa, Chicago, Ill., for plaintiffs.

Gregory L. Weber, Covington, Ky., R. Guy Taft, Cincinnati, Ohio, for defendant.

## OPINION

BERTELSMAN, Chief Judge.

The court on this motion is again faced with the endemic problem of determining

the extent to which state statutes and rules related to limitations of actions apply in federal diversity cases.

## FACTS

Two days before the statute of limitations ran, the plaintiffs, William H. McGee and Company and Carlisle Equipment Company, filed this diversity action to recover for the loss by fire of two pieces of heavy construction equipment manufactured by the defendant Liebherr America. The complaint alleged that the equipment caught on fire because of defects for which the defendant is legally responsible. Carlisle was the owner of the equipment and McGee, as its insurer, has subrogation interests.

Apparently the plaintiffs' attorney sent a paralegal or associate to file the papers without having prepared summons. In any event, summons was not issued until more than a week later—after the statute of limitations had run.

Defendant moved to dismiss on the basis of Ky.Civ.R. 3, which reads:

"A civil action is commenced by the filing of a complaint with the court *and the issuance of a summons ... thereon in good faith.*"

Ky.Civ.R. 3 (emphasis added). This rule is itself based on Ky.Rev.Stat.Ann. § 413.250, which provides:

"An action shall be deemed to commence on the date of the first summons or process issued in good faith from the court having jurisdiction of the cause of action."

*Id.*

Plaintiffs countered with the assertion that Fed.R.Civ.P. 3 and 4 should control. Rule 3 states:

"A civil action is commenced by filing a complaint with the court."

Rule 4(j) provides for the immediate issuance of summons, which must be served within 120 days.

It is apparent that whether plaintiffs' action must be dismissed depends entirely on whether the federal or Kentucky rule for commencing an action applies, since the complaint was filed within the statutory period but summons was issued after the statute of limitations had expired.

## ANALYSIS

### 1. Background

I had occasion some years ago to review the development of the doctrine of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *See Boggs v. Blue Diamond Coal Co.*, 497 F.Supp. 1105, 1108 (E.D.Ky.1980); *see also* Bertelsman, *Present Status of the Erie Doctrine*, 54 Ky. Bench & B. 10 (Winter 1990). I will not repeat that historical review in its entirety here. Rather, I will limit this discussion to those cases necessary to decide the narrow issue before the court.

In *Erie*, the Supreme Court reversed almost a century of precedent, holding that in diversity cases federal courts must apply state law to substantive issues, whether statutory or common law, general or local. Procedure in the federal courts, however, would be governed by rules promulgated under the recently enacted Rules Enabling Act, now 28 U.S.C. § 2072.

Almost immediately problems arose in deciding whether some rules were procedural or substantive. In *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), the Court held that state statutes of limitation were substantive. The Court enunciated the "outcome test." That is, in diversity litigation "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Guaranty Trust*, 326 U.S. at 109, 65 S.Ct. at 1470.

In subsequent years, the Court strengthened the outcome test in two other cases involving statutes of limitations. In *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 533, 69 S.Ct. 1233, 1235, 93 L.Ed. 1520 (1949), the Court held that a federal court in a diversity case had to follow a state rule that an action was not commenced for statute of limitations purposes until process was actually served.

A few years later, in *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 537, 78 S.Ct. 893, 901, 2 L.Ed.2d 953 (1958), the Court held that in deciding whether an issue was triable to the court or jury, a federal court should apply federal rather than state law, because of "countervailing [federal] considerations." *Id.* This seemed to be a retreat from the "outcome test."

This trend continued in *Hanna v. Plumer*, 380 U.S. 460, 472, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965), where the Court held that the federal rule authorizing service of process by leaving it at the residence of the defendant prevailed over a state rule requiring service on executors to be "in hand." The *Hanna* Court stressed, not the outcome test, but the power of Congress to provide rules for the federal courts under the Necessary and Proper Clause of the Constitution. The rationale of *Hanna* will be expanded on below in connection with the Court's most recent cases.

After *Hanna*, many commentators, including myself, thought that the outcome test had been virtually repudiated. *See Boggs*, 497 F.Supp. at 1112 n. 24. The Court resurrected it at least for statute of limitations purposes, however, in *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980). There the Court refused to overrule *Ragan*, and held that a state statute that did not deem an action commenced until service of process on the defendant must be applied by a federal court in diversity litigation.

The plaintiff in *Walker* made the same arguments as plaintiffs in the instant case. The Court responded:

"Petitioner argues that the analysis and holding of *Ragan* did not survive our decision in *Hanna*. Petitioner's position is that Okla.Stat., Tit. 12, § 97 (1971), is in direct conflict with the Federal Rule. Under *Hanna*, petitioner contends, the appropriate question is whether Rule 3 is within the scope of the Rules Enabling Act and, if so, within the constitutional power of Congress. In petitioner's view, the Federal Rule is to be applied unless it violates one of those two restrictions.

This argument ignores both the force of *stare decisis* and the specific limitations that we carefully placed on the *Hanna* analysis. . . .

"This Court in *Hanna* distinguished *Ragan* rather than overruled it, and for good reason. Application of the *Hanna* analysis is premised on a 'direct collision' between the Federal Rule and the state law. 380 U.S., at 472 [85 S.Ct. at 1144]. In *Hanna* itself the 'clash' between Rule 4(d)(1) and the state in-hand service requirement was 'unavoidable.' 380 U.S., at 470 [85 S.Ct. at 1143]. The first question must therefore be whether the scope of the Federal Rule in fact is sufficiently broad to control the issue before the Court. It is only if that question is answered affirmatively that the *Hanna* analysis applies.

"As has already been noted, we recognized in *Hanna* that the present case is an instance where 'the scope of the Federal Rule [is] not as broad as the losing party urge[s], and therefore, there being no Federal Rule which cover[s] the point in dispute, *Erie* command[s] the enforcement of state law.' *Ibid.* Rule 3 simply states that '[a] civil action is commenced by filing a complaint with the court.' There is no indication that the Rule was intended to toll a state statute of limitations, much less that it purported to displace state tolling rules for purposes of state statutes of limitations. In our view, in diversity actions Rule 3 governs the date from which various timing requirements of the Federal Rules begin to run, but does not affect state statutes of limitations. Cf. 4 C. Wright & A. Miller, Federal Practice and Procedure § 1057, pp. 190–191 (1969); *id.*, § 1051, at 165–166.

"In contrast to Rule 3, the Oklahoma statute is a statement of a substantive decision by that State that actual service on, and accordingly actual notice by, the defendant is an integral part of the several policies served by the statute of limitations. See *C & C Tile Co. v. Independent School District No. 7 of Tulsa County*, 503 P.2d 554, 559 (Okla.1972). The statute of limitations establishes a

deadline after which the defendant may legitimately have peace of mind; it also recognizes that after a certain period of time it is unfair to require the defendant to attempt to piece together his defense to an old claim. A requirement of actual service promotes both of those functions of the statute. See generally *ibid.; Seitz v. Jones*, 370 P.2d 300, 302 (Okla.1961). See also Ely, The Irrepressible Myth of Erie, 87 Harv.L.Rev. 693, 730–731 (1974). *It is these policy aspects which make the service requirement an 'integral' part of the statute of limitations both in this case and in Ragan. As such, the service rule must be considered part and parcel of the statute of limitations. Rule 3 does not replace such policy determinations found in state law. Rule 3 and Okla. Stat., Tit. 12, § 97 (1971), can exist side by side, therefore, each controlling its own intended sphere of coverage without conflict.*

"Since there is no direct conflict between the Federal Rule and the state law, the *Hanna* analysis does not apply. Instead, the policies behind *Erie* and *Ragan* control the issue whether, in the absence of a federal rule directly on point, state service requirements which are an integral part of the state statute of limitations should control in an action based on state law which is filed in federal court under diversity jurisdiction. The reasons for the application of such a state service requirement in a diversity action in the absence of a conflicting federal rule are well explained in *Erie* and *Ragan*, see *supra*, at 744–746, and need not be repeated here. It is sufficient to note that although in this case failure to apply the state service law might not create any problem of forum shopping, the result would be an 'inequitable administration' of the law. *Hanna v. Plumer*, 380 U.S., at 468 [85 S.Ct. at 1142]. *There is simply no reason why, in the absence of a controlling federal rule, an action based on state law which concededly would be barred in the state courts by the state statute of limitations should proceed through*

*litigation to judgment in federal court solely because of the fortuity that there is diversity of citizenship between the litigants.* The policies underlying diversity jurisdiction do not support such a distinction between state and federal plaintiffs, and *Erie* and its progeny do not permit it."

*Walker*, 446 U.S. at 749–53, 100 S.Ct. at 1984–86 (footnotes omitted) (emphasis added).

The broadside fired by this language sinks the instant plaintiffs' ship beneath their feet, unless subsequent decisions of the Court can afford them the means of rescue. Indeed, plaintiffs do point to two subsequent decisions of the Court which reemphasize the *Hanna* approach and seem once more to repudiate a simplistic "outcome" test.

The first of these is *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987). There the issue was whether the plaintiffs, victorious on a federal appeal from a judgment in their favor in a diversity case, were entitled to the benefit of a state statute which provided for an automatic 10% penalty. The federal rule provided for a penalty only if the appeal was frivolous. Fed.R.App.P. 38.

Certainly, the outcome under the two rules was quite different—the plaintiffs either got their 10% or they did not. Importantly, however, the plaintiffs argued that the federal and state rules were not in conflict. "Why, look," they said, "you can give us the automatic state penalty, and if the appeal is frivolous you can give us an additional penalty under the federal rule."

Relying heavily on *Hanna* and Congress' power to make rules for the federal courts, the Court rejected the plaintiffs' argument and said that the federal rule was in conflict with the state provision and only the federal rule was to be applied. *Burlington N.*, 480 U.S. at 7, 107 S.Ct. at 971. The opinion mandated the following method of analysis in deciding an *Erie* issue:

1. Determine whether the federal rule in issue is " 'sufficiently broad' to cause a 'direct collision' with the state law or, im-

plicitly, to control the issue before the court, thereby leaving no room for the operation of that law." *Id.* at 4–5, 107 S.Ct. at 969 (quoting *Walker*, 446 U.S. at 751, 100 S.Ct. at 1985).

2. If the first test is met, the federal rule must be applied if it represents a valid exercise of Congress' rule-making authority. *Id.*

Elaborating on the second test, the Court developed the theme of *Hanna*, saying:

"The constitutional constraints on the exercise of this rulemaking authority define a test of reasonableness. Rules regulating matters indisputably procedural are *a priori* constitutional. Rules regulating matters 'which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either,' also satisfy this constitutional standard. [*Hanna*, 380 U.S.], at 472, 85 S.Ct., at 1144. The Rules Enabling Act, however, contains an additional requirement. The Federal Rule must not 'abridge, enlarge or modify any substantive right....' 28 U.S.C. § 2072. The cardinal purpose of Congress in authorizing the development of a uniform and consistent system of rules governing federal practice and procedure suggests that Rules which incidentally affect litigants' substantive rights do not violate this provision if reasonably necessary to maintain the integrity of that system of rules. See *Hanna, supra,* at 464–465, 85 S.Ct., at 1140. *Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 445–446, 66 S.Ct. 242, 246, 90 L.Ed. 185 (1946); 19 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4509, p. 145–146 (1982). Moreover, the study and approval given each proposed Rule by the Advisory Committee, the Judicial Conference, and this Court, and the statutory requirement that the Rule be reported to Congress for a period of review before taking effect, see 28 U.S.C. § 2072, give the Rules presumptive validity under both the constitutional and statutory constraints. See *Hanna, supra* [380 U.S.], at 471, 85 S.Ct., at 1144."

*Burlington N.,* 480 U.S. at 5–6, 107 S.Ct. at 970.

The Supreme Court reemphasized the force of the Necessary and Proper Clause at the expense of the outcome test in *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 32, 108 S.Ct. 2239, 2245, 101 L.Ed.2d 22 (1988). The contract at issue in *Stewart* contained a forum selection clause. Such clauses were disfavored under state law, but were just one of several factors to be considered on a motion to transfer under 28 U.S.C. § 1404(a). The Court held that federal law controlled and explicated its previous *Erie* jurisprudence. In particular it added the following glosses to the tests prescribed by *Hanna* and *Burlington N.* as outlined above.

In applying the first test a court should determine whether the federal rule occupies the state rule's field of operation. *Stewart Org.,* 487 U.S. at 26, 108 S.Ct. at 2242. In making this determination the term "direct collision" used in the previous cases "is not meant to mandate that federal law and state law be perfectly coextensive and equally applicable ...; rather the 'direct collision' language, at least where the applicability of a federal statute is at issue, expresses the requirement that the federal statute be sufficiently broad to cover the point in dispute." *Id.* at 27 n. 4, 108 S.Ct. at 2242 n. 4.

In applying the second test, whether the federal statute or rule is valid, there is a strong presumption in favor of validity. As to statutes: "If Congress intended to reach the issue before the [federal] [c]ourt, and if it enacted its intention into law in a manner that abides with the Constitution, that is the end of the matter." *Id.* at 27, 108 S.Ct. at 2242.

The federal court can refuse to apply a Federal Rule of Civil Procedure only if the Advisory Committee, the Supreme Court, and Congress "erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act [prohibiting rules abridging substantive rights] nor constitutional restrictions." *Id.*

As to issues to which the federal law does not extend, a third test must be applied: "If no federal statute or Rule covers the point in dispute, the District Court then proceeds to evaluate whether application of federal judge-made law would disserve the so-called 'twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws.'" *Id.* at 27 n. 6, 108 S.Ct. at 2243 n. 6 (quoting *Hanna*, 380 U.S. at 468, 85 S.Ct. at 1142).

## 2. The Case at Bar

We turn now to the case at bar and attempt to apply the criteria derived from these decisions.

Plaintiffs argue that, under the first test, Fed.R.Civ.P. 3 and 4 are sufficiently broad to cover the issue before the court. They assert that the purpose of the state statute, in providing that issuance of process in good faith is a condition precedent to "commencing" an action, is to prohibit litigants from filing suits and letting them sit without notice to the defendant.[1] The same problem is addressed in Fed.R.Civ.P. 3 and 4 by allowing the action to be "commenced" upon filing the complaint, but requiring that process must be served within 120 days as a condition subsequent. Fed. R.Civ.P. 4(j).

Therefore, the plaintiffs argue, the rules are in "direct collision" under the rubric spelled out in *Stewart Org.*, 487 U.S. at 27 n. 4, 108 S.Ct. at 2242 n. 4. Since Rules 3 and 4 are undoubtedly valid under the Enabling Act and Constitution, plaintiffs argue, "that is the end of the matter." *Id.* at 27, 108 S.Ct. at 2242.[2]

The logic of this argument is difficult to refute. Yet where *Erie* is concerned, history is often more important than logic. The result sought by plaintiffs is directly contrary to the holding and rationale of *Walker*. Plaintiffs argue that the Court overruled *Walker* implicitly in *Burlington N.* and *Stewart Org.* I cannot agree, however, since the Supreme Court cited *Walker* with approval several times in both opinions.

I can only conclude that the Supreme Court regarded state statutes of limitations as a separate and unique situation, and persisted in the *Walker* rationale that Fed. R.Civ.P. 3 "governs the date from which various timing requirements of the Federal Rules begin to run, but does not affect state statutes of limitations." *Walker*, 446 U.S. at 751, 100 S.Ct. at 1985.

If this is inconsistent with the approach in *Burlington N.* and *Stewart Org.*, the inconsistency will, in my view, have to be resolved by the Supreme Court.

If *Walker* remains good law, then the issue before this court must be analyzed as follows:

1. Does a federal rule cover the point in issue? *Walker* says no, because this is a statute of limitations question and Fed. R.Civ.P. 3 is not concerned with it.

2. Would an application of federal judge-made law disserve the twin aims of the *Erie* rule: discouragement of forum shopping and avoidance of inequitable administration of the laws? *Stewart Org.*, 487 U.S. at 27 n. 6, 108 S.Ct. at 2243 n. 6. Somewhat reluctantly, because I have al-

---

**1.** Plaintiffs also argue that the Kentucky requirement that an action is not commenced until process is issued is not integral to the state's statute of limitations. The Kentucky courts have consistently held that whatever statute of limitations applies, it is not tolled until summons is issued. *See, e.g., Brock v. Turner Fuel Co.*, 296 Ky. 729, 178 S.W.2d 427, 429 (1944); *Simpson v. Antrobus*, 260 Ky. 641, 86 S.W.2d 544, 545–46 (1935); *Whittinghill v. Smith*, 562 S.W.2d 649, 650 (Ky.Ct.App.1977). Thus, the state courts have implicitly recognized the issuance of summons requirement as central to the tolling of the statute.

**2.** A weaker argument made by plaintiffs is that they should not be penalized for a possible clerk error in failing to issue summons. The parties have failed to submit any evidence, however, that the clerk mistakenly omitted the issuance of process after plaintiffs requested it. In any case, this court's local rules specifically place the burden for preparing process on the plaintiff's attorney. E.D.Ky.R. 5(a). Since plaintiffs have provided no evidence that they complied with this rule prior to expiration of the limitations period, they cannot now shift blame to the clerk. *See also Casey v. Newport Rolling Mill Co.*, 156 Ky. 623, 161 S.W. 528, 530 (1913) (court distinguished "directing a summons to be issued" from "actually causing it to be issued.")

ways thought the state rule was a trap for the unwary,[3] I must answer the question affirmatively. Precisely because obscure state rules can be traps for the unwary, out-of-state citizens may be inclined to forum shop in favor of the federal court. Inequitable application of the laws (in the *Erie* sense) also results, because litigants with diversity of citizenship have an option to lessen their exposure to traps for the unwary that non-diverse litigants do not.

Other federal courts, when presented with this same issue, have uniformly followed the rule of *Walker* that state law determines when the statute of limitations is tolled, although they do not discuss the effect of *Burlington N.* or *Stewart Org. See, e.g., Walker v. Thielen Motors, Inc.,* 916 F.2d 450, 451 (8th Cir.1990); *Patterson v. American Bosch Corp.,* 914 F.2d 384, 387 (3d Cir.1990); *Converse v. General Motors Corp.,* 893 F.2d 513, 516 (2d Cir.1990); *Mullen v. Sears, Roebuck, & Co.,* 887 F.2d 615, 616–18 (5th Cir.1989); *Rowland v. Patterson,* 852 F.2d 108, 110 (4th Cir.1988), *on reh'g,* 882 F.2d 97 (4th Cir.1989); *State of Wis. Inv. Bd. v. Plantation Square Assocs.,* 761 F.Supp. 1569, 1573 (S.D.Fla. 1991).

Therefore, the motion to dismiss this action as barred by the statute of limitations must be sustained. A separate judgment will issue concurrently herewith.

IT IS SO ORDERED.

## JUDGMENT

Pursuant to the separate opinion and order entered concurrently herewith, IT IS ORDERED AND ADJUDGED that defendant's motion to dismiss be, and it is, hereby GRANTED; that plaintiffs' complaint be, and it is, hereby DISMISSED; and that this action be, and it is, hereby STRICKEN from the docket. The defendants shall recover their costs.

**3.** *See* W. Bertelsman & K. Philipps, *Kentucky Practice* 16C (1984).