Elliot TILLMAN, Plaintiff,

v.

State of GEORGIA, et al., Defendants.

No. 606CV053.

United States District Court,
S.D. Georgia,
Statesboro Division.

Nov. 29, 2006.

John Paul Batson, Augusta, GA, for Plaintiff.

Devon Orland, Atlanta, GA, Walter W. Ballew, III, Barrow & Ballew, PC, Savannah, GA, for Defendants.

### AMENDED ORDER

EDENFIELD, District Judge.

## I. INTRODUCTION

Plaintiff Elliot Tillman brings this combined 42 U.S.C. § 1983 and state-law action against East Central Georgia Drug Task Force ("Task Force") Officer Jordan Kight and various defendants charged with training Task Force officers ("training defendants"). Doc. # 1. Tillman asserts violations of his Fourth and Fourteenth Amendment rights stemming from Kight's use of a taser to arrest Tillman as he fled from Task Force officers. Id. Tillman also asserts that the same facts support claims under the Georgia Constitution. Id. The training defendants and Kight move the Court under F.R.Civ.P. 12(b)(1) & (6) to dismiss Tillman's case for lack of subject matter jurisdiction and for his failure to state a claim. Doc. ## 7, 10. In addition, Kight moves to dismiss Tillman's claims as time-barred. Doc. # 10. The Court will address only Kight's untimeliness motion in this Order.

## II. BACKGROUND [1]

On 5/25/04, Kight and other Task Force officers gave chase to Tillman on suspicion of a misdemeanor sale of controlled substances. Doc. # 1 at 5, ¶¶ 25–26. They carried tasers issued by the Georgia Bureau of Investigation (GBI) and the Task Force, but the GBI and Task Force provided no training for their use. Id. at 5, ¶¶ 23–24. Kight, without warning, shot Tillman in the back with his taser and repeatedly pulled the trigger, delivering electrical shocks into Tillman's spinal column. Id. at 7–8, ¶¶ 37, 39, 51. Kight deployed the taser as Tillman fled, even though he knew Tillman from high school and knew where Tillman lived. Id. at 6, ¶¶ 28–29. Kight also had no indication that Tillman had committed a dangerous felony, Id. ¶ 31, had a weapon, Id. ¶ 30, or had made any threats to anyone. Finally, Kight knew Tillman to be generally harmless and used the taser, even though tack-

---

1. On Rule 12(b)(6) (failure to state a claim) dismissal motions, the Court accepts the allegations in the Complaint as true and construes them in the light most favorable to the plaintiff. *Jackson v. BellSouth Telecomm.,* 372 F.3d 1250, 1262 (11th Cir.2004). The following facts are derived from Tillman's Complaint and, for this Order only, are accepted as true.

ling Tillman was an available option. *Id.* ¶¶ 35–36.

The taser shocks caused Tillman to seize, which in turn caused physical injury as he collapsed to the ground. *Id.* at 7 ¶¶ 41–44. He was hospitalized for three days and continues to suffer because of Kight's actions. *Id.* ¶¶ 43–44.

Tillman primarily claims that Kight's actions constituted an unreasonable use of force in violation of the Fourth Amendment. *Id.* at 7–8, ¶¶ 47–52. He additionally contends that the initial shock from the taser effected his arrest, and thus the subsequent shocks constituted abuse of a pretrial detainee in violation of the Fourth Amendment. *Id.* Plaintiff also maintains that the use of the taser constituted punishment without due process of law in violation of the Fourteenth Amendment. *Id.* at 8, ¶¶ 1, 54. Finally, Tillman alleges that Kight's actions violated the Georgia Constitution's due process, (Ga. Const. art. I., sec.I., ¶ I), equal protection, (*id.* ¶ II), and abuse clauses (*id.* ¶ XVII ("nor shall any person be abused in being arrested, while under arrest, or in prison")).

### III. *ANALYSIS*

Kight argues that Tillman's claims are barred by the applicable statute of limitations. Doc. # 11 at 7–9. This seemingly simple contention opens a Pandora's Box of procedural specters. The specters arise because this Court's jurisdiction is mixed—federal question jurisdiction under 28 U.S.C. § 1331 for Tillman's § 1983 claims, supplemental jurisdiction under 28 U.S.C. § 1367 for Tillman's Georgia constitutional claims—and because of the inter-

action between Georgia's service-of-process rules and its statutes of limitations.

Such complexity warrants a brief recapitulation. Federal courts generally decide claims falling into one of four categories: (1) claims arising out of federal law (federal-question claims); (2) claims arising out of state law between parties from different states where the amount in controversy exceeds $75,000 (diversity claims); (3) state-law claims arising out of the same nucleus of operative fact as a filed diversity claim (diversity/supplemental state-law claims); and (4) state-law claims arising out of the same nucleus of operative facts as a filed federal law claim (federal/supplemental state-law claims).

In category (1), federal-question claims, federal law governs both the substance and procedure of the action and generally state law need not be referenced. In categories (2) and (3)—diversity and diversity/supplemental claims—the federal court must delve into the law as developed around the seminal case of *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), which, as an oversimplification, requires that state law govern substance and federal law govern procedure. Though never explicitly stated by the Supreme Court, the *Erie* doctrine must also govern the applicable law in category (4)—federal/supplemental state-law claims—as discussed *infra.*

■ Tillman filed this case within the applicable Georgia statute of limitations period, O.C.G.A. § 9–3–33, but did not serve Kight until 110 days later, after § 9–3–33's two-year period had run. To stop the statute of limitations clock in Georgia,[2]

---

2. For statute of limitations analyses, a Court must determine a start and an end date for the statute of limitations clock. If the length of time between the start and end date is more than the statute of limitations period, the lawsuit will be dismissed as untimely.

Whether using the wording "toll," "satisfy," "stops the clock," etc. the idea is that, for statute of limitations purposes, the Court must fix an end date for the statute of limitations period. As will be seen *infra,* the end date is not necessarily the date the lawsuit

a plaintiff must file suit *and* serve the defendant (1) within five days; or (2) after five days, so long as the plaintiff is diligent in perfecting service. *Childs v. Catlin*, 134 Ga.App. 778, 781, 216 S.E.2d 360 (1975); *see also Williams v. Bragg*, 260 Ga.App. 377, 378, 579 S.E.2d 800 (2003). If the plaintiff complies with (1) or (2), the service relates back to the date the suit was filed, which then controls for statute of limitations purposes.

Kight argues that Tillman's three-plus month delay in serving him evidences a lack of diligence, so the statute of limitations bars his case. Tillman responds that because the Court's jurisdiction is based on the federal claim at issue, rather than diversity of citizenship, the Court should hold that F.R.Civ.P. 3—"A civil action is commenced by filing a complaint with the court"—sets the applicable statute of limitations end date. Under Rule 3, then, § 9–3–33's clock stopped ticking the day Tillman filed his Complaint with this Court. Plaintiff also argues that, even if Georgia's service requirement applies, the 120–day service provision of F.R.Civ.P. 4(m) applies, not Georgia law, so his service on Kight 110 days after he filed this Complaint would relate back to the date this case was filed (thus, it would not be time-barred).

Were this a category (2) or (3)—diversity or diversity/supplemental—case, the Georgia service requirement would apply. *Cambridge Mut. Fire Ins. v. City of Claxton, Ga.*, 720 F.2d 1230, 1232–33 (11th Cir.1983). *Cambridge* was based on *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), in which the Supreme Court held that Oklahoma's similar statute of limitations/service provision applied in diversity cases. That stat-

ute, the Court concluded, was an integral part of the state statute of limitations and did not "directly collide" with Rule 3. Absent such direct collision, the federal court should apply both the state and federal law. *Walker*, 446 U.S. at 748–49, 100 S.Ct. 1978. The Court reasoned that "[t]here is no indication that [Rule 3] was intended to toll a state statute of limitations, much less that it purported to displace state tolling rules for purposes of state statutes of limitations." *Id.* at 750–51, 100 S.Ct. 1978. Citing *Walker*, the *Cambridge* court held that the Georgia diligent-service rule was an integral part of the Georgia statute of limitations and must apply in diversity cases (categories (2) and (3) above). 720 F.2d at 1233.

■ To summarize, in diversity cases states may require steps additional to Rule 3 (the "commencement" rule) to stop a statute of limitations clock, and those requirements will be applied in federal court. In other words, the word "commencement" in Rule 3 does not set the end date for statute of limitations purposes; it is merely a necessity to which additional requirements can be added. Georgia's service-of-process rule is just such an additional requirement, so it applies in diversity cases.

In contrast, the Georgia service requirement would not apply if this Court's jurisdiction were based solely on the federal nature of the claim under 28 U.S.C. § 1331 (hence, category (1)—federal question—cases). *West v. Conrail*, 481 U.S. 35, 39 & n. 4, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987).

The *West* Court dealt with a federal claim where Congress had neglected to specify an accompanying limitations statute. In such cases, courts sometimes "borrow" an analogous limitations statute

---

was "commenced." *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 750–51, 100 S.Ct.

1978, 64 L.Ed.2d 659 (1980).

from federal or state law. The issue before the Court was how to determine the end date for the statute of limitations, which in *West* was borrowed from *federal* law. The *West* court held "that when the underlying cause of action is based on federal law and the absence of an express federal statute of limitations makes it necessary to borrow a limitations period from *another statute*, the action is not barred if it has been 'commenced' in compliance with Rule 3." *Id.* at 39, 107 S.Ct. 1538 (emphasis added).

Though the claim in *West* borrowed a statute of limitations from federal law, the Court used the general phrase "another statute," as opposed to "another *federal* statute." Therefore, the "*West* rule" may be read to apply, and thus set the end date for the statute of limitations at Rule 3 "commencement," irrespective of whether the statute of limitations is borrowed from federal or state law.

Some courts have held that *West* only applies when the statute of limitations is borrowed from federal law. *E.g., Sain v. City of Bend, Or.,* 309 F.3d 1134, 1138 (9th Cir.2002). Such a holding would be relevant here because Tillman's § 1983 claim borrows the *state* (Georgia) statute of limitations, not a federal limitations statute. The *Sain* court held, in the end, that the state statute of limitations borrowed by § 1983 was tolled by Rule 3 commencement, though the court held *West* did not compel that result. Thus, whether compelled by *West* itself or following from *Sain*, the *West* rule applies with equal force when the statute of limitations period for a federal claim is borrowed—as is the case here—from state law.

To summarize, Rule 3 always applies in federal court to commence various time constraints imposed by the federal rules. Under *West*, Rule 3 "commencement" also sets the end date for any statute of limita-tions (*i.e.,* federal or state) borrowed by a *federal* claim (category (1)). In contrast, Rule 3 "commencement" only sets the statute of limitations end date for a *state-law* claim in a diversity-based action (categories (2) & (3)) when the state has imposed no other requirements under *Walker* (the *Walker* rule, again, is that states may require steps additional to Rule 3 commencement to toll a state statute of limitations). Hence, if the state has imposed other requirements under *Walker*, then a federal court sitting in diversity must apply those other requirements. Finally, the Supreme Court has not pronounced the appropriate interaction between Rule 3 and state-law claims supplemental to federal question claims (category (4)).

### A. Georgia's Service Requirement

■ The *West* rule forecloses application of Georgia's service requirement to Tillman's § 1983 claims. Again, when a federal cause of action borrows a statute of limitations from another statute—state or federal—Rule 3 commencement sets the proper end date for the borrowed statute of limitations. *West*, 481 U.S. at 39, 107 S.Ct. 1538. Claims pursuant to § 1983 borrow the state statute of limitations for personal injury actions. *Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Therefore, Georgia's two year limit on bringing personal injury actions applies. O.C.G.A. § 9–3–33. *West* dictates, however, that the end date for the borrowed statute of limitations is set by Rule 3 commencement alone, so Georgia's service rule is inapplicable and Kight's statute of limitations argument regarding Tillman's § 1983 claims is rejected.

■ Next, the Court must decide whether Georgia's service requirement applies to Tillman's *state-law* claims, which are in this Court pursuant to federal-question supplemental jurisdiction (category

(4)). Tillman argues that the *Erie* doctrine does not apply, thus *Walker* and *Cambridge* do not apply, because jurisdiction is founded on the federal question at issue. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 26 n. 3, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) ("We therefore are not called on to decide, nor do we decide, whether the existence of federal-question as well as diversity jurisdiction necessarily alters a district court's analysis of applicable law"); *Walker*, 446 U.S. at 744, 100 S.Ct. 1978 (*Erie* guides "whether state or federal law should apply on various issues in an action based on state law which has been brought in federal court *under diversity of citizenship* " (emphasis added)).

Tillman's argument fails. *Erie*'s foundation is the Rules of Decision Act, 28 U.S.C. § 1652, which requires that "[t]he laws of the several states ... shall be regarded as rules of decision in civil actions in the courts of the United States, *in cases where they apply.*" *Id.* (emphasis added). The "cases where [state laws] apply" include state claims brought under supplemental jurisdiction as well as claims grounded in diversity jurisdiction. The Eleventh Circuit endorsed that view without analysis in *Jackson v. BellSouth Telecommunica-*

*tions. See* 372 F.3d 1250, 1274–75 (11th Cir.2004) ("we are *Erie*-bound to apply Florida law in evaluating plaintiffs' supplemental state-law claims"). Thus, *Cambridge* [3] controls, and Georgia's service requirement applies to Tillman's state-law claims. Tillman therefore needed to file those claims and serve Kight in order to stop the statute of limitations clock.

## B. Service Requirement—Governing Law

Tillman argues that even if the Court and applies Georgia law, requiring filing service to stop the limitations clock, the timing of service is governed by federal law. He argues that the federal 120–day limit for service, adopted after *Walker* and *Cambridge* and currently embodied in Rule 4(m),[4] directly collides with Georgia's five-day-or-reasonable-diligence scheme.[5] This argument requires the Court to dive into the complex mix of cases surrounding *Erie*.

An *Erie* problem arises when a state claim is heard in federal court, and a state practice the court is urged to apply conflicts with the normal practice of the

---

**3.** Recall that under *Cambridge* the Georgia diligent-service rule is an integral part of the Georgia statute of limitations and must apply in diversity cases.

**4.** Though the court decided *Cambridge* on 12/5/83, nine months after the effective date of the 120–day time limit for service of process, *see* Fed. R. Civ. Pro. Amendments Act of 1982, Pub.L. No. 97–462, 96 Stat. 2527 (1983), the service of process at issue in the case occurred before the effective date of the Act and the opinion did not mention the new rule. This 120-day service requirement was originally embodied in Rule 4(j).

**5.** Kight cites *McAndrew v. Lockheed Martin Corp.*, 177 F.3d 1310, 1314 (11th Cir.1999), *vacated in part*, 206 F.3d 1031 (11th Cir.2000) (en banc), in which the Georgia service rule

was applied, as foreclosing this argument. *See also Morris v. Haren*, 52 F.3d 947, 949 (11th Cir.1995). In both of those cases the Eleventh Circuit merely assumed that the Georgia service rule applied, never mentioning Rule 4. The cases, then, are not binding since the circuit court never reached this argument on the merits. *See FEC v. NRA Political Victory Fund*, 513 U.S. 88, 96, 115 S.Ct. 537, 130 L.Ed.2d 439 (1994) ("The jurisdiction of this Court was challenged in none of [the listed actions in which jurisdiction was exercised], and therefore the question is an open one before us."); *Tompkins v. U.S.*, 946 F.2d 817, 820 (11th Cir.1991) (reasoning that its holding was not inconsistent with previous panel's decision because arguments relied on "were never briefed by counsel nor addressed by the court" in the previous case).

federal court. For example, federal courts allow service of process by delivering the summons and complaint to a resident of suitable age and discretion at defendant's home, whereas many states require personal service of process on defendant. The *Erie* problem: Should the federal court, hearing the state-law claim, follow the federal or state practice?

To decide, the federal court must first determine if the practices can be applied side-by-side. If so, the court can avoid the problem altogether; the practices are said not to collide directly and the court can follow the commands of both. If the federal and state practices collide, the analysis turns on the source of the federal practice. If the federal practice is a command of the Constitution, the federal court must follow that practice. Also, if the federal practice is the command of a congressional statute or Federal Rule of Civil Procedure, the Court must apply that statute or Rule if the statute or Rule is valid.

To be valid, the command of the statute or Rule must be within Congress's authority to dictate procedure in the federal courts, which extends to "regulat[ing] matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either." *Hanna v. Plumer*, 380 U.S. 460, 472, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). In the case of a Federal Rule of Civil Procedure enacted pursuant to the Rules Enabling Act, the Rule must also "pass[ ] muster" under the Act's proscription on rules that "abridge, enlarge or modify any substantive right." *Id.* at 464, 85 S.Ct. 1136; 28 U.S.C. § 2702(b).

■ Finally, if the federal practice is not commanded by positive law, but rather arises from the general mode of conducting business in federal court, the court must make a "relatively unguided *Erie* choice." [6] *Hanna*, 380 U.S. at 470, 85 S.Ct. 1136. The unguided *Erie* choice is most often undertaken when a federal statute or Rule is deemed not to collide directly with a state practice, thus no federal law is "directly on point." *Walker*, 446 U.S. at 752, 100 S.Ct. 1978. The choice involves deciding whether the application of the urged federal practice would be outcome determinative with "reference to the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Hanna*, 380 U.S. at 468, 85 S.Ct. 1136. However, even if the outcome-determinative test suggests the court should apply the state practice, the federal court should nonetheless apply the federal practice if applying the state practice would unduly encumber an essential characteristic of the federal court system. *Byrd v. Blue Ridge Rural Elec. Coop.*, 356 U.S. 525, 537, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958).

■ Here, Kight urges the Court to apply Georgia's five-day-or-reasonable-diligence scheme for service of process, while Tillman argues that the 120–day time limit for service of process articulated in Rule 4(m) directly collides with Georgia's rule. If Rule 4(m) does not collide directly with the Georgia rule, the Court need not engage in an unguided *Erie* choice; the Court in *Walker* undertook such a choice and held that "in the absence of a federal rule directly on point, state service requirements which are an integral part of the state statute of limitations should control" because applying a general federal practice "would be an inequitable adminis-

---

**6.** In the unlikely event that the general mode of conducting business is not arguably procedural under *Hanna*, or abridges, enlarges, or modifies a substantive right in violation of the Rules Enabling Act, the state practice would, of course, trump the federal practice.

tration of the law." *Walker*, 446 U.S. at 752–53, 100 S.Ct. 1978 (quotes omitted).

Courts that have analyzed the application of Rule 4(m) to state-law claims have overlooked two salient features of the enactment of the Rule. First, Rule 4(m) was enacted after *Walker* and *Cambridge*, and those cases dealt exclusively with the effect of Rule 3 on state statutes of limitations, never mentioning Rule 4. Therefore, *Walker* controls only after it is decided that Rule 4(m) does not directly collide with the state rule. *But see Morse v. Elmira Country Club*, 752 F.2d 35, 42 (2d Cir.1984) (argument that Rule 4(m) controls "is a dubious proposition at best in light of *Walker* "); *Wm. H. McGee & Co. v. Liebherr Am., Inc.*, 789 F.Supp. 861, 866 (E.D.Ky.1992) ("The result sought by plaintiffs is directly contrary to the holding and rationale of *Walker* "); *Poulos v. Wilson*, 116 F.R.D. 326 (D.Vt.1987) ("In *Walker*, the Supreme Court clearly ruled that federal Rule 3, concerning commencement of actions, was never intended to displace state tolling rules for purposes of state statutes of limitations. We therefore are unwilling to find that federal Rule 4[(m)], dealing with service of process, displaces state rules that describe the steps needed to commence an action so as to toll the state limitations period." (cite omitted)); *Robinette v. Johnston*, 637 F.Supp. 922, 925 (M.D.Ga.1986) (holding that *Walker* and *Cambridge* require applying Georgia's five-day-or-reasonable-diligence scheme, rather than Rule 4).

Second, the 120–day limit "was not simply prescribed by [the Supreme] Court pursuant to the Rules Enabling Act. Instead, the Rule was enacted into law by Congress as part of the Federal Rules of Civil Procedure Amendments Act of 1982, § 2, 96 Stat. 2527." *Henderson v. U.S.*, 517 U.S. 654, 668, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996). Thus the 120–day limit need not pass muster under the Rules Enabling Act. *But see, e.g., Hart v. Bates*, 897 F.Supp. 710, 715 n. 11 (E.D.N.Y.1995) ("If a Federal Rule had been enacted governing the tolling of state statutes of limitations, its validity would undoubtedly be gravely in doubt under the Rules Enabling Act").

In addition to these oversights, courts have consistently, and erroneously, appealed to the twin aims of *Erie*—to prevent forum-shopping and avoid the inequitable administration of the law—in deciding whether Rule 4(m) directly collides with state service of process law. *See, e.g., Hammons v. Int'l Playtex, Inc.*, 676 F.Supp. 1114, 1117 (D.Wyo.1988); *Robinette*, 637 F.Supp. at 925 ("An action based on state law which would be barred in the state courts should not be permitted to proceed in federal court solely because of the fortuity that there is diversity of citizenship.... To do so would result in an 'inequitable administration of the laws' "). These courts allude to the closing paragraph of *Walker*, in which the Court stated:

> There is simply no reason why, *in the absence of a controlling federal rule*, an action based on state law which concededly would be barred in the state courts by the state statute of limitations should proceed through litigation to judgment in federal court solely because of the fortuity that there is diversity of citizenship between the litigants.

*Walker*, 446 U.S. at 753, 100 S.Ct. 1978 (emphasis added). But those courts begged the question by ignoring the limiting language emphasized above and citing *Walker* as requiring that Rule 4(m) be held not to conflict with state law. This Court declines to rely on these ill-reasoned cases, and instead proceeds to decide the *Erie* issue by resolving whether Rule 4(m) directly collides with Georgia's requirement that service be perfected within five

days or in a reasonable and diligent manner.

If the rules directly collide, the result is clear under *Hanna*. As an enactment of Congress, the federal 120–day limit is not subject to the limitations of the Rules Enabling Act because it was not adopted pursuant to that Act. Thus, the 120–day limit is valid notwithstanding an application that would "abridge, enlarge or modify a[ ] substantive right." 28 U.S.C. § 2702(b). Furthermore, a rule delimiting the time frame for service of process is "rationally capable of classification" as procedural, and thus it is within Congress's power to enact as a necessary and proper means of regulating procedure in federal court, notwithstanding any encroachment on areas traditionally regulated by the states. *Hanna*, 380 U.S. at 472, 85 S.Ct. 1136.

*Hanna* was the first case in which the Supreme Court found a direct collision between a state law and a Federal Rule of Civil Procedure. The plaintiff in that case, bringing a state claim against the defendant in federal court pursuant to diversity jurisdiction, served process on the defendant by leaving a copy of the complaint and summons with the defendant's wife at the defendant's residence. *Id.* at 461, 85 S.Ct. 1136. This method of service complied with Rule 4, permitting service by leaving copies of the complaint and summons at the individuals "dwelling house or usual place of abode with some person of suitable age and discretion residing therein." *Id.* (quoting then-Rule 4(d)(1), currently embodied in Rule 4(e)(2)).

The *Hanna* defendant moved to dismiss, as the state-law cause of action the plaintiff was pursuing required "serv[ice] by delivery in hand." *Id.* at 462, 85 S.Ct. 1136. The Court held that, between the two rules, "the clash is unavoidable; Rule 4(d)(1) says—implicitly, but with unmistak-

able clarity—that in-hand service is not required in federal courts." *Id.* at 470, 85 S.Ct. 1136. Thus, the plaintiff's service was valid under Rule 4.

The Supreme Court has since analyzed direct collisions in several *Erie* cases. *See Stewart Org.*, 487 U.S. at 29, 108 S.Ct. 2239 (1988) (direct collision between state law disfavoring forum selection clauses and federal transfer of venue statute); *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 7, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987) (direct collision between federal discretionary penalty for frivolous appeals and state automatic 10% penalty for any losing appeal); *Walker*, 446 U.S. at 752, 100 S.Ct. 1978 (no collision between Rule 3 and state statute of limitations service requirements). The collision here, however, is most aptly analyzed under the Court's non-*Erie* decision in *Henderson v. U.S.*, 517 U.S. 654, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996).

In *Henderson*, a merchant mariner brought suit against the United States under the Suits in Admiralty Act. The Act required that plaintiffs "forthwith serve a copy" of the complaint on the appropriate U.S. Attorney. 46 U.S.C. App'x § 742. The plaintiff served the appropriate party within 120 days, but the service was not "forthwith." *Henderson*, 517 U.S. at 659–60, 116 S.Ct. 1638. The lower courts held that the forthwith-service requirement was jurisdictional, thus the subsequently enacted Rule 4(m) did not supersede the requirement with its 120–day allowance. *Id.* at 660, 116 S.Ct. 1638. The Court granted certiorari to decide "whether Federal Rule 4, which authorizes an extendable 120–day period for service of process, supersedes the Suits in Admiralty Act provision that service on the United States be made 'forthwith.'" *Id.*

The Government argued
that Rule 4's extendable 120–day time prescription, and the Suits in Admiralty

Act's service 'forthwith' instruction, can and should be read harmoniously.... The apparent conflict dissolves, the Government urge[d], if one reads Rule 4 as establishing not an affirmative right to serve a complaint within 120 days, but only an outer boundary for timely service.

*Id.* at 661, 116 S.Ct. 1638 (quotes and alteration omitted). The Court flatly rejected this argument. "Reading Rule 4 in its historical context, we conclude that the 120–day provision operates not as an outer limit subject to reduction, but as an irreducible allowance." *Id.* "[T]herefore [the Court was] satisfied that Rule 4's regime conflicts irreconcilably with Suits·in Admiralty Act § 2's service 'forthwith' instruction...." *Id.* at 663, 116 S.Ct. 1638. Rule 4, then, controlled. *Id.*

Turning back to the case at hand, the Court notes the following provision in Rule 4:

> **(m) Time Limit for Service.** If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

F.R.Civ.P. 4(m). The *Henderson* Court, "[r]eading Rule 4 in its historical context ... conclude[d] that the 120–day provision operates *not as an outer limit subject to reduction, but as an irreducible allowance.*" 517 U.S. at 661, 116 S.Ct. 1638 (emphasis added). Georgia law requires that

> When service is to be made within this state, the person making such service

shall make the service within five days from the time of receiving the summons and complaint; but failure to make service within the five-day period will not invalidate a later service.

O.C.G.A. 9–11–4(c). Thus, Rule 4(m) provides for possible sanctions on the plaintiff if service is not perfected within 120 days, while Georgia law provides for possible sanctions on the plaintiff if service is not perfected within five days. Georgia judicial decisions have added that, though plaintiff fails to serve defendant within five days, he will not be sanctioned if service is perfected in a reasonable and diligent fashion. *E.g., Williams v. Bragg,* 260 Ga.App. 377, 378, 579 S.E.2d 800 (2003).

Every court to hear this issue in a situation where service of process was independent of a statute of limitations has held that Rule 4(m) preempts state rules providing a shorter service of process period. *See Spung v. Fairwinds Fin. Servs.,* 2006 WL 2048291 at *2 (M.D.Fla. July 20, 2006) (unpublished); *Melvin v. Wal–Mart Stores, Inc.,* 338 F.Supp.2d 622, 625 (M.D.N.C.2004); *Mills v. Curioni, Inc.,* 238 F.Supp.2d 876, 885 (E.D.Mich.2002); *Hart v. Bates,* 897 F.Supp. 710, 718 (E.D.N.Y.1995). Every court to hear this issue in a situation in which service of process was tied to a statute of limitations has held—or stated in dicta—that Rule 4(m) and the state rule providing a shorter service of process period do not directly collide. *Morse,* 752 F.2d at 42; *McGee,* 789 F.Supp. at 866; *Hammons,* 676 F.Supp. at 1117; *Poulos v. Wilson,* 116 F.R.D. 326,· 330 (D.Vt.1987); *Robinette,* 637 F.Supp. at 925.

Thus, lining up cases on either side of the issue, it seems that courts thus far have decided whether the rules collide

based not on the content of the rules, but the consequences of breaking them. By this reasoning, the result in *Hanna* would change if the service-in-hand state rule, instead of providing for dismissal on its own, was a requirement to set the end date of the statute of limitations.

*Walker,* however, does not compel such a result. Though *Walker* allows the states latitude to create additional hurdles for a plaintiff to set an end date on statutes of limitations, those hurdles are preempted in federal court to the extent they directly collide with congressional enactments like the 120–day limit. The *Walker* Court recognized this, stating that "in the <u>absence</u> of a federal rule directly on point, state service requirements which are an integral part of the state statute of limitations should control," which implies that when a federal rule *is* directly on point, state service requirements which are an integral part of the state statute of limitations *should not* control. 446 U.S. at 752, 100 S.Ct. 1978 (emphasis added). The issue addressed by both rules is service of process; that Georgia law imposes a different consequence for failing to properly serve process does not change the analysis.

Just as the Federal Rule at issue in *Hanna* "sa[id]—implicitly, but with unmistakable clarity—that in-hand service is not required in federal courts," 380 U.S. at 472, 85 S.Ct. 1136, Rule 4(m) says—implicitly, but with unmistakable clarity—that service is not required in federal court before "120 days after the filing of the complaint." F.R.Civ.P. 4(m). This is the reading given the Rule by the Supreme Court in *Henderson,* 517 U.S. at 661, 116 S.Ct. 1638, and though this situation is slightly different, the Rule should not be given different meanings in different contexts. Therefore, just as the Court in *Henderson* was "satisfied that Rule 4's regime conflicts irreconcilably with Suits in Admiralty Act § 2's service 'forthwith'

instruction," this Court is satisfied that Rule 4's regime conflicts irreconcilably with Georgia's five-day-or-reasonable-diligence scheme. *Id.* at 663, 116 S.Ct. 1638.

The Court is mindful of the federalism concerns that arise when a congressional pronouncement tinkers with the "rights and obligations ... created by one of the States" simply because "Congress has made a federal court another available forum." *Guaranty Trust Co. v. York,* 326 U.S. 99, 101, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). The scope of a state-created right is necessarily tied to the statute of limitations the state assigns to that right; "the *Erie* principle precludes a federal court from giving a state-created claim 'longer life ... than [the claim] would have had in the state court.'" *Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 430, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) (quoting *Ragan v. Merchants Transfer & Warehouse Co.,* 337 U.S. 530, 533–34, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949)).

This Order may be said to tinker with the scope of rights created by the State of Georgia by extending the life of those rights. Any extension, however, is not given by this Court in an unguided *Erie* choice; it was given by Congress in enacting the Federal Civil Procedure Amendments Act of 1982, providing an "irreducible allowance" of 120 days for serving process in federal court. *Henderson,* 517 U.S. at 661, 116 S.Ct. 1638. The Act's effect on substantive state rights is a permissible consequence of the federal government's exercise of its power to draft laws necessary and proper to create and regulate a federal court system. U.S. CONST. art. I, sec. 8, cl. 9, 18; *see Hanna,* 380 U.S. at 476, 85 S.Ct. 1136 (Harlan, J. concurring) (Court's touchstone for federal power is whether the enactment is "arguably procedural").

Therefore, though Tillman was required to file the complaint and serve Kight to

stop the Georgia statute of limitations clock here, the timeliness of his service is controlled by Rule 4(m). Tillman thus had 120 days to serve Kight and have that service relate back to the date of filing. Because he served Kight 110 days after the complaint was filed, that service related back to the date of filing, which was before the applicable statute of limitations ran. Therefore, Kight's limitations-based dismissal motion must be denied.

## IV. CONCLUSION

Defendant Jordan Kight's motion to dismiss on statute of limitations grounds is **DENIED.** Doc. #10. The remaining motions in doc. #10 and the motions of other defendants in doc. #7 will be addressed in a subsequent Order.