# Third District Court of Appeal

## State of Florida

Opinion filed October 13, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-2204
Lower Tribunal No. 19-16891
_____

**Carlos Enrique Luna Lam, et al.,**
Appellants,

vs.

**Univision Communications, Inc., et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Daryl E. Trawick, Judge.

Nelson Mullins Broad and Cassel, and Beverly A. Pohl (Ft. Lauderdale), and Mark F. Raymond, and Amy Steele Donner; Harder LLP, and Charles J. Harder, and Dilan Esper, and Lan P. Vu, and Ryan J. Stonerock (Beverly Hills, CA), for appellants.

Podhurst Orseck, P.A., and Stephen F. Rosenthal, and Peter Prieto, and Alissa Del Riego; Ballard Spahr LLP, and Leita Walker (Minneapolis, MN), Seth D. Berlin, and Lauren Russell (Washington, DC), for appellees.

Before LINDSEY, HENDON, and BOKOR, JJ.

LINDSEY, J.

Appellants Carlos Enrique Luna Lam and Iglesia Cristiana Casa de Dios (Plaintiffs below) appeal from a final order dismissing their defamation action with prejudice pursuant to Florida's Anti-SLAPP Statute, section 768.295, Florida Statutes (2021). Though we agree with Appellants that Florida's Anti-SLAPP statute does not create a different motion to dismiss standard, we nevertheless affirm the trial court's dismissal because Appellants failed to plead facts that, if proven, would establish actual malice. However, we reverse the trial court's dismissal with prejudice, and we remand without prejudice to amend the Complaint.

## I.    BACKGROUND

Carlos Enrique Luna Lam is a pastor and co-founder of Iglesia Cristiana Casa de Dios in Guatemala. In December 2018, Appellee Univision Communications, Inc. aired a television special that profiled several Latin American megachurches and pastors, including Luna (the "Original Broadcast").[1]  Univision also published several related articles

---

[1] The special was entitled "Los Magnates de Dios" (Magnates of the Lord). Luna's segment was called "Todo por Cash" (Everything for Cash), a reference to Luna's nickname, "Cash Luna." According to Luna, this nickname came from his inability to pronounce his name "Carlos" when he was a child.

online.  The Original Broadcast and the written articles include statements from Jorge Mauricio Herrera Bernal, a pilot who has admitted to transporting cocaine for a Columbian cartel and who claimed to be a United States Drug Enforcement Administration informant.[2]  Herrera Bernal asserted that Luna accepted money to build his church complex from his next-door neighbor, Marllory Chacón, a convicted drug trafficking cartel boss known as the "Queen of the South."

Luna and Casa de Dios (collectively, "Plaintiffs") brought the underlying defamation action against three Univision entities and two journalists who worked on the report (collectively, "Univision").[3]  According to the Complaint, "Univision falsely accused Pastor Luna of, among other things, accepting and laundering large amounts of money from a convicted drug trafficker, [Chacón], and using that money to build a new church for Casa de Dios."  The Complaint goes on to specifically identify many alleged defamatory statements having to do with Luna's ties to Chacón.  The Complaint further alleges that Univision's primary source, Herrera Bernal, was not reliable and

[2] Univision also interviewed a second, corroborating source, who appeared anonymously.

[3] There are three Univision entities: Univision Communications, Inc.; Univision Interactive Media, Inc.; and The Univision Network Limited Partnership.  The two journalists are Gerardo Reyes and Peniley Ramírez.  Ramírez was not served below and is therefore not a party to this appeal.

provided false information and that Univision "knew the statements were false, had serious doubts as to their truth, or published them with reckless disregard for, and in purposeful avoidance of, the truth."

Univision moved to dismiss the Complaint with prejudice pursuant to Florida's Anti-SLAPP statute, section 768.295. In its motion, Univision argued that Florida's Anti-SLAPP statute imposed a "materially higher burden" on Plaintiffs than a typical motion to dismiss. Univision also argued that because Plaintiffs are public figures, the "actual malice" standard for defamation applied and that the alleged facts, even if true, were insufficient as a matter of law to establish actual malice.

In their Response, Plaintiffs argued that the Anti-SLAPP statute does not create a new, separate Anti-SLAPP motion with different substantive standards. With respect to the actual malice standard for defamation, Plaintiffs did not dispute the standard applied, but they asserted the allegations in the Complaint were sufficient to allege actual malice.

Plaintiffs served over 230 discovery requests, and Univision moved to stay discovery while its motion to dismiss was pending. The parties ultimately stipulated to stay discovery. The stipulated order recognized that the parties "do not agree as to their respective burdens for a motion to

4

dismiss under the Anti-SLAPP Statute." The parties agreed to limit their submissions to the following:

> (a) Defendants' motion, (b) the Parties' respective memoranda of law, (c) the Complaint and its exhibits, (d) the news articles, broadcasts, and/or publications referenced in the Complaint and their certified translations, and (e) items capable of judicial notice. *The Parties further agree that the Court may consider only these items in deciding the Motion to Dismiss.*

(Emphasis added).

At the conclusion of the hearing on Univision's motion to dismiss, the judge asked each side to submit proposed orders. The trial court adopted Univision's proposed order, which concludes that Florida's Anti-SLAPP statute places the burden on Plaintiffs—not on Univision—to prove their claims are not without merit. The order also concludes that Plaintiffs did not adequately plead facts that, if proven, would establish actual malice. Finally, the order dismisses the Complaint *with prejudice* "[b]ecause amendment to the Complaint would be futile . . . ." Plaintiffs timely appealed.

## II. ANALYSIS

The order on appeal has two components. First, it determines that Florida's Anti-SLAPP statute shifts the burden to Plaintiffs to prove their claims are not "without merit." And second, the order concludes that

5

Plaintiffs did not adequately plead facts that, if proven, would establish actual malice.

**A. Florida's Anti-SLAPP Statute**

According to the order on appeal, Florida's Anti-SLAPP statute imposes a heightened burden on Plaintiffs by requiring "Plaintiffs—not Defendants—to prove their claims are not 'without merit.'"   Plaintiffs argue that a motion to dismiss filed pursuant to the Anti-SLAPP statute is governed by the same standards as an ordinary motion to dismiss under the Florida Rules of Civil Procedure.   That is, "upon a motion to dismiss a complaint for failure to state a cause of action, all material allegations of the complaint are taken as true. Those allegations are then reviewed in light of the applicable substantive law to determine the existence of a cause of action." Peeler v. Indep. Life & Acc. Ins. Co., 206 So. 2d 34, 36 (Fla. 3d DCA 1967) (citations omitted); see also United Auto. Ins. Co. v. Law Offices of Michael I. Libman, 46 So. 3d 1101, 1103–04 (Fla. 3d DCA 2010) ("A motion to dismiss under rule 1.140(b) tests whether the plaintiff has stated a cause of action, not whether the plaintiff will prevail at trial. Therefore, '[a]ll allegations of the complaint must be taken as true and all reasonable inferences drawn therefrom must be construed in favor of the non-moving party.'" (citations and internal quotation marks omitted)).

This is an issue of first impression for this Court, the resolution of which depends on the interpretation of section 768.295. We review the trial court's interpretation of the statute de novo and begin, as always, with the text of the statute. See, e.g., Page v. Deutsche Bank Tr. Co. Americas, 308 So. 3d 953, 958 (Fla. 2020).

In 2000, the Florida Legislature enacted section 768.295 for the purpose of prohibiting government entities from engaging in "Strategic Lawsuits Against Public Participation" or "SLAPP" suits. In 2015, the statute was amended to extend this prohibition to "persons." The 2015 amendment also expanded protections to "free speech in connection with public issues."

The statute's stated purpose is as follows:

> (1) It is the intent of the Legislature to protect the right in Florida to exercise the rights of free speech in connection with public issues, and the rights to peacefully assemble, instruct representatives, and petition for redress of grievances before the various governmental entities of this state as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution. It is the public policy of this state that a person or governmental entity not engage in SLAPP suits because such actions are inconsistent with the right of persons to exercise such constitutional rights of free speech in connection with public issues. Therefore, the Legislature finds and declares that prohibiting such lawsuits as herein described will preserve this fundamental state policy, preserve the constitutional

7

rights of persons in Florida, and assure the continuation of representative government in this state. It is the intent of the Legislature that such lawsuits be expeditiously disposed of by the courts.

§ 768.295(1), Fla. Stat. (2021).

The statute further provides for the expeditious resolution of a lawsuit in violation of the statute as follows:

(4) A person or entity sued by a governmental entity or another person in violation of this section has a right to an expeditious resolution of a claim that the suit is in violation of this section. A person or entity may move the court for an order dismissing the action or granting final judgment in favor of that person or entity. The person or entity may file a motion for summary judgment, together with supplemental affidavits, seeking a determination that the claimant's or governmental entity's lawsuit has been brought in violation of this section. The claimant or governmental entity shall thereafter file a response and any supplemental affidavits. As soon as practicable, the court shall set a hearing on the motion, which shall be held at the earliest possible time after the filing of the claimant's or governmental entity's response. The court may award, subject to the limitations in s. 768.28, the party sued by a governmental entity actual damages arising from a governmental entity's violation of this section. The court shall award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section.

§ 768.295(4), Fla. Stat. (2021)

8

As set forth above, the statute explicitly states that a defendant "may move the court for an order dismissing the action or granting final judgment . . . ." Id. However, the statute is silent as to any heightened burden on the plaintiff that differs from the ordinary motion to dismiss standard. This alone prevents us from agreeing with Univision's position that the statue imposes a heightened burden on plaintiffs. See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 93 (2012) ("Nothing is to be added to what the text states or reasonably implies (*casus omissus pro omisso habendus est*). That is, a matter not covered is to be treated as not covered.").

In the order on appeal, the trial court concluded that Plaintiffs' argument that the ordinary motion to dismiss standard applied contravened the plain language, not of the statute, but of Gundel v. AV Homes, Inc., 264 So. 3d 304 (Fla. 2d DCA 2019).[4] In Gundel, the Second District discussed the dismissal standard applicable under Florida's Anti-SLAPP statute. The court recognized, as we have, that "the statute is silent as to the burden or procedure for considering a motion to dismiss." Id. at 314. However, the

---

[4] We recognize that Gundel was the only district court decision interpreting Florida's Anti-SLAPP statute and was therefore binding on the trial court. See Pardo v. State, 596 So. 2d 665, 666 ("[I]n the absence of interdistrict conflict, district court decisions bind all Florida trial courts.").

9

court proceeded to adopt a two-step burden-shifting analysis that is similar to the test used in states with explicit burden-shifting provisions, specifically using Maine as an example:

> In considering motions to dismiss as to its anti-SLAPP statute, the Maine Supreme Court has stated that "the defendant carries the initial burden to show that the suit was based on some activity that would qualify as an exercise of the defendant's First Amendment right to petition the government" such that the anti-SLAPP statute applies and then "the burden falls on the plaintiff to demonstrate that the defendant's activity" is actionable.

Id. (quoting Schelling v. Lindell, 942 A.2d 1226, 1229 (Me. 2008)).

Unlike Florida's statute, however, Maine's statute provides for a "special motion to dismiss" and *explicitly* sets forth the burden-shifting in the statute. See Me. Rev. Stat. tit. 14, § 556 ("The court shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleading and supporting and opposing affidavits stating the facts upon which the liability or defense is

based.")[5] Because the language in Maine's statute is materially different from the language in Florida's statute—which does not contain a burden-shifting provision—we do not consider the case law from Maine applicable here.

Most states have some form of anti-SLAPP legislation, which varies greatly in scope and strength.[6] Many state statutes require the movant to bear the initial burden of establishing that the anti-SLAPP statute applies. If this initial burden is met, some statutes, like Maine's, explicitly *shift the burden to the plaintiff*. For example, in California, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a

---

[5] In at least one state, anti-SLAPP legislation that shifted the burden to the plaintiff has been found to be unconstitutional. See Davis v. Cox, 351 P.3d 862, 874–75 (Wash. 2015) ("The legislature may enact anti-SLAPP laws to prevent vexatious litigants from abusing the judicial process by filing frivolous lawsuits for improper purposes. But the constitutional conundrum that RCW 4.24.525 creates is that it seeks to protect one group of citizen's constitutional rights of expression and petition—by cutting off another group's constitutional rights of petition and jury trial. This the legislature cannot do."), abrogated on other grounds, Maytown Sand & Gravel, LLC v. Thurston County, 423 P.3d 223 (2018).

[6] According to the Public Participation Project, which tracks anti-SLAPP legislation, 33 states and the District of Columbia have anti-SLAPP laws. See State Anti-SLAPP Laws—Public Participation Project, http://www.anti-slapp.org/your-states-free-speech-protection (last visited October 12, 2021).

11

special motion to strike, *unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.*" Cal. Code Civ. Proc. § 425.16(b)(1) (emphasis added); see also Samuel J. Morley, Florida's Expanded Anti-SLAPP Law: More Protection for Targeted Speakers, Fla. B.J., Nov. 2016 (describing the two-step analysis in California, Texas, and other states with similar burden shifting anti-SLAPP legislation). Many of these statutes predate Florida's. If our Legislature had intended to adopt this burden-shifting approach, it no doubt would have enacted a statute with similar language.

Federal courts interpreting Florida's Anti-SLAPP statute have likewise concluded that the statute does not impose a heightened burden on the plaintiff. Because a federal court exercising diversity jurisdiction cannot apply a state statute if it conflicts with the Federal Rules of Civil Procedure, federal courts must sometimes interpret state anti-SLAPP statutes to determine whether they contain a burden-shifting provision. See Carbone v. Cable News Network, Inc., 910 F.3d 1345, 1349 (11th Cir. 2018). In Carbone, for example, the Eleventh Circuit considered Georgia's Anti-SLAPP statute. Because Georgia's statute requires the plaintiff to establish "a probability" of prevailing, it imposed a burden that conflicted with the

Federal Rules of Civil Procedure and, therefore, could not be applied in federal court.  Id. at 1350-51.[7]

---

[7] More specifically, the Carbone court explained as follows:

> The Georgia anti-SLAPP statute also compromises the joint operation of Rules 8, 12, and 56. Taken together, these Rules provide a comprehensive framework governing pretrial dismissal and judgment. Under Rule 12(d), a motion to dismiss for failure to state a claim under Rule 12(b)(6) or a motion for judgment on the pleadings "must be treated as one for summary judgment under Rule 56" if "matters outside the pleadings are presented to and not excluded by the court...." In other words, the Rules contemplate that a claim will be assessed on the pleadings alone or under the summary judgment standard; there is no room for any other device for determining whether a valid claim supported by sufficient evidence to avoid pretrial dismissal.
>
> In short, Rules 8, 12, and 56 express "with unmistakable clarity" that proof of probability of success on the merits "is not required in federal courts" to avoid pretrial dismissal, and that the evidentiary sufficiency of a claim should not be tested before discovery. [Hanna v. Plumer, 380 U.S. 460, 470 (1965)]. But the relevant provisions of the Georgia anti-SLAPP statute explicitly require proof of a probability of success on the merits without the benefit of discovery. The result is a "direct collision" between the Federal Rules and the motion-to-strike provision of the Georgia statute. [Id. at 472].

Id.

13

In Bongino v. Daily Beast Co., LLC, 477 F. Supp. 3d 1310, 1323 (S.D. Fla. 2020), the Southern District considered whether Florida's Anti-SLAPP statute conflicted with the Federal Rules of Civil Procedure. The court recognized that "[t]he Eleventh, Fifth, D.C., and now Second Circuits agree: certain states' iterations of the anti-SLAPP statute . . . conflict with the Federal Rules of Civil Procedure because they raise the bar for a plaintiff to overcome a pretrial dismissal motion." Id. at 1322–23. But this is "[n]ot so for Florida's anti-SLAPP statute" because "it does not require the plaintiff to establish a probability that he will prevail on the claim asserted in the complaint. Nor does Florida's statute contemplate a substantive, evidentiary determination of the plaintiff's probability of prevailing on his claim. At bottom, Florida's statute is a garden variety fee shifting provision, which the Florida legislature enacted to accomplish a fundamental state policy—deterring SLAPP suits." Id. at 1323 (citations and internal quotation marks omitted); see also Corsi v. Newsmax Media, Inc., 519 F. Supp. 3d 1110, 1128 (S.D. Fla. 2021) ("Florida's statute does not conflict with any Federal Rule of Civil Procedure."); Isaac v. Twitter, Inc., 21-CV-20684, 2021 WL 3860654, at *6 (S.D. Fla. Aug. 30, 2021) ("At bottom, Florida's statute is a garden variety fee shifting provision, which the Florida legislature enacted to accomplish a

14

'fundamental state policy'—deterring SLAPP suits." (quoting <u>Bongino</u>, 477 F. Supp. 3d at 1323).[8]

In short, because the plain language of Florida's Anti-SLAPP statute does not shift the burden to Plaintiffs to establish that their claims have merit, we decline to follow the approach in <u>Gundel</u> and add to the statue that which is not in its text.

**B. Actual Malice**

Having established that Florida's Anti-SLAPP statute does not impose a heightened burden on the Plaintiffs in this case, we turn now to the merits of Univision's motion. "A trial court's ruling on a motion to dismiss for failure to state a cause of action is an issue of law, and therefore, our standard of review is *de novo*." <u>Schilling v. Herrera</u>, 952 So. 2d 1231, 1234 (Fla. 3d DCA 2007).

It is undisputed that the actual malice standard for defamation applies because Plaintiffs are public figures. See <u>New York Times Co. v. Sullivan</u>,

---

[8] In <u>Wentz v. Project Veritas</u>, No: 617CV1164ORL18GJK, 2019 WL 910099, at *3 (M.D. Fla. Feb. 22, 2019), <u>aff'd sub nom.</u> <u>Wentz v. Veritas</u>, No: 617CV1164ORL18GJK, 2019 WL 11504451 (M.D. Fla. Apr. 29, 2019), the court quoted <u>Gundel's</u> burden-shifting language. The issue before the court was whether the defendants' discovery request was relevant to their potential anti-SLAPP defense. The court held that the discovery request was relevant based on the language in the statute. The court did not address whether <u>Gundel's</u> burden-shifting analysis applied as that issue was not before the court.

376 U.S. 254 (1964). Actual malice occurs when a statement is made "with knowledge that it was false or with reckless disregard of whether it was false or not." Id. at 280. "[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice." Readon v. WPLG, LLC, 317 So. 3d 1229, 1235 (Fla. 3d DCA 2021), review denied, SC21-893, 2021 WL 3523557 (Fla. Aug. 11, 2021) (quoting St. Amant v. Thompson, 390 U.S. 727, 731 (1968)).

Plaintiffs contend Univision published with actual malice because it should have been aware that its primary source, Herrera Bernal, is a criminal whose competency was questioned in a separate criminal case. Moreover, Plaintiffs further argue that Univision should have been aware of certain "outrageous" allegations Herrera Bernal made in a series of pro se lawsuits. In short, Plaintiffs' allegations concern Univision's failure to adequately investigate Herrera Bernal's background.

We agree with the trial court that Plaintiffs failed to plead sufficient facts to show that Univision published with sufficient doubts as to the truth of its

16

publication. As this Court recently explained, "'[a]ctual malice requires more than a departure from reasonable journalistic standards . . . [t]hus, a failure to investigate, standing on its own, does not indicate the presence of actual malice.' Instead, 'there must be some showing that the defendant purposefully avoided further investigation with the intent to avoid the truth.'" Readon, 317 So. 3d at 1235 (quoting Michel v. NYP Holdings, Inc., 816 F. 3d 686, 701–02 (11th Cir. 2016)).

While it is true that Herrera Bernal's competency was questioned in a separate criminal case, the judge in that proceeding found Bernal competent in two separate rulings.[9] And it is also true that Herrera Bernal filed several *pro se* complaints with some implausible allegations. But even assuming Univision knew about Herrera Bernal's pro se filings, nothing in these complaints contradict Herrera Bernal's account that Chacón gave money to Luna. In fact, the complaints consistently allege that she did. See Talley v. Time, Inc., 923 F.3d 878, 903 (10th Cir. 2019) ("Sources need not be paragons of virtue for journalists safely to rely on them." (quoting 1 Robert

---

[9] Though this information is outside of the Complaint, the parties stipulated the trial court could consider it in deciding the motion to dismiss. Cf. Corsi 519 F. Supp. 3d at 1118–19 ("[W]hen considering a 12(b)(6) motion to dismiss, the court's review is generally 'limited to the four corners of the complaint.' However, the court may also consider 'documents incorporated into the complaint by reference and matters of which a court may take judicial notice.'" (citations omitted)).

17

D. Sack, <u>Sack on Defamation: Libel, Slander, and Related Problems</u> § 5:5.2(C) at 5-109 (5th ed. 2017))).

Plaintiffs' allegations simply do not satisfy the actual malice standard. In <u>Readon</u>, this Court recognized a limited set of circumstances in which actual malice might arise from a failure to investigate. 317 So.3d at 1236. The allegations here, even if true, do not establish that Univision's Original Broadcast and online publications "were fabricated, wholly imaginary, based on an unverified anonymous phone call, inherently improbable, or obviously worthy of doubt." <u>See</u> <u>id.</u> (quoting <u>Michel</u>, 816 F. 3d at 705). Because the Complaint fails to satisfy the actual malice standard, we affirm the trial court's dismissal. However, we remand to permit Plaintiffs an opportunity to amend their complaint. <u>See</u> <u>id.</u> at 1238 ("Generally, refusal to allow amendment of a pleading constitutes an abuse of discretion unless it clearly appears that allowing the amendment would prejudice the opposing party; the privilege to amend has been abused; or the amendment would be futile.").[10]

---

[10] "[A]s an action progresses, the privilege of amendment progressively decreases to the point that the trial judge does not abuse his [or her] discretion in dismissing with prejudice." <u>Readon</u>, 317 So. 3d at 1238 (quoting <u>Kohn v. City of Miami Beach</u>, 611 So. 2d 538, 539 (Fla. 3d DCA 1992)). In <u>Readon</u>, this Court affirmed the trial court's dismissal with prejudice of the *third amended complaint*, explaining that "with amendments beyond the third attempt, dismissal with prejudice is generally not an abuse of discretion." <u>Id.</u> (quoting <u>Kohn</u>, 611 So. 2d at 539). Here, by contrast, Plaintiffs have not yet amended their original complaint.

18

### III. CONCLUSION

As set forth above, we decline to follow the Second District's decision in <u>Gundel</u> because the plain text of Florida's Anti-SLAPP statute does not impose a heightened burden on Plaintiffs. We nevertheless affirm the trial court's dismissal because Plaintiffs failed to satisfy the actual malice standard. We reverse only with respect to the trial court's dismissal with prejudice. Moreover, to the extent this decision is in direct conflict with <u>Gundel</u>, we certify conflict. <u>See</u> Art. 5, § 3(b)(4), Fla. Const.

Affirmed in part, reversed in part, and remanded without prejudice to amend.